581 So.2d 599 (1991)
George TROTMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 88-01226.
District Court of Appeal of Florida, Second District.
March 15, 1991.
*600 James Marion Moorman, Public Defender, and Wendy Friedberg, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Affirmed. See State v. Flowers, 566 So.2d 50 (Fla. 2d DCA 1990); State v. Edwards, 547 So.2d 183 (Fla. 2d DCA 1989).
CAMPBELL, A.C.J., and LEHAN, J., concur.
ALTENBERND, J., dissents with opinion.
ALTENBERND, Judge, dissenting.
The trial court denied Mr. Trotman's dispositive motion to suppress. The police seized powdered cocaine, which they found in a paper bag, during a warrantless search of Mr. Trotman's locked, unoccupied car. I would reverse that order and the resulting conviction because the state did not prove that the police had probable cause to search the car. The police relied exclusively on a current description of the defendant, coupled with an allegation that he was selling powdered cocaine. The information was provided by an anonymous tipster over the telephone. The tipster's information contained no predictions of future suspicious activity. The police did not corroborate any suspicious information. They conducted no independent investigation of criminal activity. A stop of Mr. Trotman, which may have been permissible as a stop-and-frisk, did not establish anything suspicious to justify the subsequent search. Under the standard announced in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1982), the quality and quantity of the information available to the police under all of the circumstances did not establish probable cause at the time the car was searched. Because the reliability of the anonymous source was a weak factor under these circumstances, the balancing test announced in Gates required additional evidence of a crime before this search could be conducted.
At 10:15 a.m. on Friday, November 6, 1987, a detective with the Tampa Police Department received a telephone call from an anonymous citizen. The anonymous citizen told the detective that he did not want to identify himself and that he was just going to use the name "Clarence."
Clarence told the detective that he had recently seen a black male, approximately 5' 11" and in his mid-thirties, standing in front of the Busy Bee Bar. He said that this man was dressed in blue jeans, a goldish-brown shirt, and a blue baseball cap. Clarence said that the individual was dealing in powdered cocaine at the bar and had powdered cocaine in his car. Clarence believed the individual had about twenty packets of cocaine. The anonymous tipster said that the car was a white, late-model Ford with a license plate that said "Panama." Panama was allegedly the individual's street name. If the tipster provided any other information concerning what he had seen which caused him to believe that the individual was dealing in powdered cocaine or how he had seen it, that information was not described to the trial court. The tipster did not indicate that the individual was armed.
The detective believed he recognized the voice over the telephone and asked the tipster whether he had previously provided information over the telephone under the pseudonym of "Junior." The anonymous citizen agreed that he had given prior information under that name. The detective had never met "Junior," but someone had previously used that name to provide information concerning drug activity in the vicinity of the Busy Bee Bar. "Junior" had claimed he was giving information because some member of his family had had problems with drugs.
The detective testified that he had received information from Junior "several times." In the past, if the police "were not doing something else," they would respond to Junior's information and search the area. Based on the prior information, they had located "some" of the suspects Junior had described and assumed that others had left before they could get to the bar. The *601 detective "believed" he had recovered powdered cocaine as a result of these tips but provided no specific information concerning the recovered cocaine. The prior information had never been used to obtain a warrant, and the detective did not indicate whether the information had ever resulted in an arrest or a conviction.
Based on his experience, the detective believed that powdered cocaine was distributed around the Busy Bee Bar area  an area he regarded as a "high crime area." Following the tip from Clarence, the detective and another officer proceeded immediately to the Busy Bee Bar. They discovered a man outside the bar who fit the description and also observed the white car. Without waiting to observe any activity, the police immediately arrested the man, later identified as Mr. Trotman. They handcuffed Mr. Trotman and advised him of his Miranda rights. A search of his person located no incriminating evidence.
The search did produce keys to the white car. Without Mr. Trotman's consent and without any additional evidence, the officers unlocked his car and searched it. They located a brown paper bag which contained packets of powdered cocaine.
Because this was a warrantless search, the state had the burden to prove that the police officers had probable cause to search this vehicle either incident to a lawful arrest of Mr. Trotman or as an investigatory search independent of the arrest. Walker v. State, 433 So.2d 644 (Fla. 2d DCA 1983); Morales v. State, 407 So.2d 321 (Fla. 3d DCA 1981). Without reweighing the evidence, I cannot find competent substantial evidence in the record to authorize this search. I would emphasize that I do not question the officer's veracity and accept his testimony as entirely correct. I assume that Clarence and Junior are the same person. Under a Gates analysis, a virtually unknown informant who provides information that does not include either a prediction of future suspicious conduct or present suspicious conduct capable of corroboration simply does not create probable cause to arrest a person such as Mr. Trotman or to search his unoccupied car.
In Gates, the Supreme Court considered a similar case in which the police received a letter from an anonymous tipster. The letter predicted detailed future conduct by two individuals who allegedly were involved in interstate drug transactions. After corroborating many of the future events  including an airplane trip to Florida and an automobile trip shortly thereafter northward toward Chicago  the police obtained a warrant. The Supreme Court upheld this warrant while announcing the "all the circumstances" test.
Although the Gates opinion eliminated the rigid demands of the two-prong test that had evolved under Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1964), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Court maintained that "veracity," "reliability," and "basis of knowledge" were all "highly relevant in determining the value" of an informant's report. Gates, 462 U.S. at 230, 103 S.Ct. at 2328. Under Gates, all of these factors are considered from a commonsense perspective to determine the weight to be given the source of the report.
Because the tip in Gates came from an anonymous source, the Court concluded it must balance the weakness of the source under the circumstances with other stronger factors. As the Court states:
Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972): "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity.
Gates, 462 U.S. at 232, 103 S.Ct. at 2329.
The Court in Gates overcame the weakness of the source, the anonymous tip, by relying upon the quality of the report and law enforcement's corroboration of detailed predictions of future conduct and past events:
Finally, the anonymous letter contained a range of details relating not just to easily *602 obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.
Gates, 462 U.S. at 245, 103 S.Ct. at 2335.
Because the tipster in this case has given some prior information of limited value, I agree that his reliability is a stronger factor in this case than in Gates. On the other hand, the evidence did not permit the trial court or this court to find the tipster to be more than marginally reliable. Although legal opinions frequently use the term "confidential informant" as if it had a single meaning, it is clear that the concept involves a number of variables which impact on both the reliability of the source and the value of information provided. Anonymity is an important variable. An informant whose identity is known to the police can be subjected to a background check. He or she can be subpoenaed and cross-examined. Motivation for providing information can be determined. A known informant can be legally accountable for false information. These factors are all missing when the informant is merely a voice on the other end of a telephone line.
Because the informant was an anonymous telephone tipster, the police needed to offset this weakness in the source of the information by a higher quality or greater quantity of suspicious information. This tipster in fact provided little or no suspicious information to backup his allegations. Unlike Gates, the tipster in this case predicted no future event. He merely provided an accurate description of a man standing near his car in front of a bar in a "high crime area."
Despite the war on drugs, it is not incriminating for a thirty-year-old person to stand in front of a bar in the morning sunlight. It is not incriminating to wear blue jeans and a baseball cap. Many honest, law-abiding people now live in neighborhoods which the police unfortunately can describe as "high crime areas." Owning a white Ford is even popular in police departments, and the state generates additional revenues when vehicle owners purchase license plates with nicknames printed on them. The sum of these parts may be slightly more suspicious than the isolated parts, but they are not facts which create a higher quality or greater quantity of suspicion.
In Alabama v. White, ___ U.S. ___, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Supreme Court reconfirmed its intention to use an equation for fourth amendment analysis in which factors that are quite weak must be offset by stronger factors. In White, the Court considered a consensual search following a Terry stop. The police had received an anonymous telephone tip which predicted a future cocaine transaction involving a particular woman who could be found at a particular address. The tipster predicted that the woman would get in a particular car, drive to a particular location, and engage in a drug sale. After corroborating most of these future events, the police concluded that they had enough suspicious evidence to justify a Terry stop. The Supreme Court agreed in a six-to-three decision.
In White, the Court emphasized that it was relying upon the lesser standard required for a stop as compared to the probable cause standard needed for an arrest or a search. It stated:
Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors  quantity and quality  are considered in the "totality of the circumstances  the whole picture," United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

White, 110 S.Ct. at 2416 (emphasis added).
Even to surpass the lower threshold for reasonable suspicion, the Court relied heavily on corroboration of future events:

*603 What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information  a special familiarity with respondent's affairs.
White, 110 S.Ct. at 2417 (emphasis original).
Under the analysis in Gates and White, I am not certain whether the Supreme Court would agree that "Clarence" had provided enough information for a Terry stop when he predicted no future behavior. Perhaps his prior calls as "Junior" would create sufficient reliability to offset this weakness. See State v. Brown, 556 So.2d 790 (Fla. 2d DCA 1990); Stevens v. State, 573 So.2d 1034 (Fla. 3d DCA 1991). I am convinced, however, that the Supreme Court would not accept this information as sufficient for the higher standard required to establish probable cause.
I would emphasize that the police could have overcome the thinness of this tip by continued police work. For example, if they had waited undercover to observe Mr. Trotman engage in activity suggesting a drug transaction, this would be a different case. It would be a different case if a trained narcotics dog had alerted to the car or if Mr. Trotman had consented to the search following a simple police encounter.
The majority relies upon State v. Flowers, 566 So.2d 50 (Fla. 2d DCA 1990). In Flowers, the officer received a call from a known and reliable informant who had provided information for several years. The informant provided precise information concerning the location of the cocaine on the defendant. While Flowers treads very close to the edge of the fourth amendment, I do not believe it authorizes the additional step which the majority takes in this case.
The majority also relies on State v. Edwards, 547 So.2d 183 (Fla. 2d DCA 1989). In Edwards, a tipster predicted a future set of events which would culminate in a drug transaction. The police corroborated most of the future events before they made their stop. Thus, Edwards involves future behavior. This case does not. Edwards is similar to State v. Abiri, 539 So.2d 492 (Fla. 2d DCA 1989), in which we expressly stated that an anonymous tip did not provide probable cause until a crucial prediction was validated by the officer's observation of the event.
In closing, without expanding this dissent with a detailed description of the facts and analysis in Williams v. State, 531 So.2d 246 (Fla. 5th DCA 1988), and Holmes v. State, 549 So.2d 1119 (Fla. 1st DCA 1989), I would suggest that the majority's opinion reaches a result in conflict with these other two districts.