591 So.2d 1058 (1991)
Willie CUNNINGHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 91-00234.
District Court of Appeal of Florida, Second District.
December 27, 1991.
*1059 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Leslie Schreiber, Asst. Atty. Gen., Miami, for appellee.
CAMPBELL, Judge.
Appellant, Willie Cunningham, in this appeal from his conviction and sentence for the possession of rock cocaine, challenges the denial of his motion to suppress the cocaine which was found pursuant to a search of his person predicated on an anonymous tip. Appellant pled nolo contendere to the charge of possession of rock cocaine, reserving his right to appeal the denial of his motion to suppress. The state stipulated that the denial of appellant's motion to suppress was dispositive. Based on the reasoning stated herein, we reverse the order denying appellant's motion to suppress.
The evidence presented at the suppression hearing showed that at approximately 9:00 p.m. on September 18, 1990, an Officer Layhew of the Bradenton Police Department received a telephone call from an anonymous caller who stated that there was narcotics activity taking place behind a particular bar and package store in a highcrime area. Officer Layhew was aware of past narcotics activity at that location. The anonymous caller described two individuals allegedly involved in the narcotics activity. One alleged suspect, "Willie George" (appellant), was described as wearing blue shorts and a blue T-shirt. The caller said appellant would be standing behind the rear door of the bar and was also said to have just "re-upped" on cocaine. Officer Layhew testified he took that phrase to mean appellant had just acquired more narcotics to sell. The caller described the second alleged suspect as another black male called "Wally," who would be wearing red shorts and a white T-shirt and who would be standing to the right side of the back door. Officer Layhew also testified that confidential informants had in the past supplied information that appellant was selling narcotics but that the police, though they had tried, had never been able to verify or confirm that information.
Officer Layhew contacted a Captain Van Zant, Corporal Daisy and Officer Taylor to assist in investigating the current anonymous tip. They all arrived at the described bar about twenty minutes after the anonymous call. Officer Layhew entered the front door of the bar as Officers Daisy and Taylor approached the rear door. They apparently made no effort prior to entering the bar and approaching the two described suspects to observe the scene and verify *1060 whether the suspects were in fact selling narcotics. While Officer Layhew recognized the name "Willie George" as someone who was currently under investigation for drug activity, that activity had not been corroborated. Neither did the officers observe any drug activity at the time of this encounter with appellant.
Officer Layhew first observed appellant wearing blue shorts and a blue T-shirt standing to the left of the rear door of the bar with a man Officer Layhew knew to be Eddie Hart, who had a prior narcotics arrest. To the right of the rear door, Officer Layhew observed another black man wearing red shorts and a white T-shirt, who was later identified as "Wally." Without observing anything further of significance as to any narcotics activity, Officer Layhew approached appellant and asked him to step over to the nearby police car and place his hands on the vehicle. None of the officers had observed any criminal activity. Officer Layhew identified himself to appellant and advised appellant that he, Officer Layhew, had received an anonymous call informing him that appellant was holding and selling cocaine. Officer Layhew asked appellant if he had anything on him that he should not have. Appellant replied that he did not. Officer Layhew never advised appellant of his Miranda rights. At that time, Officer Layhew observed "Wally" running away. Officer Layhew then took hold of the waistband of appellant's shorts and conducted a pat-down search of appellant. Without stating the reasons, Officer Layhew testified that at that time he thought he had probable cause to search appellant. Officer Layhew discovered a cellophane package containing cocaine in appellant's shirt pocket. He found no weapon and he did not testify that he had reason to believe or had been advised that appellant was armed. In fact, Officer Layhew testified he was not in fear for his safety. Appellant was then arrested, handcuffed and put in the police car. Officer Layhew acquired the keys to appellant's car apparently so that Eddie Hart could drive the car home. In the course of that process, Officer Layhew asked appellant for permission to search the vehicle. According to Officer Layhew, appellant voiced no objection and consented. According to appellant, he consented because he had been placed under arrest, Officer Layhew had his keys and appellant assumed he would search the car anyway because appellant had previously been told that an officer could search his car after an arrest. A small piece of rock cocaine was found in appellant's car.
The trial judge denied appellant's motion to suppress, relying upon Jones v. State, 498 So.2d 1359 (Fla. 2d DCA 1986), finding that the police had probable cause to believe appellant was in possession of cocaine based upon sufficient verification of the information received from the anonymous tipster.
This case illustrates well a growing concern we have that there is a misperception among law enforcement officers as well as some judges concerning the character of verification evidence that is necessary to validate an anonymous tip of criminal activity and thereby authorize a search and seizure or arrest based on such anonymous information. In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Supreme Court held that an anonymous tip that is sufficiently corroborated by independent police investigation may furnish reasonable suspicion that a suspect is engaged in criminal activity so as to warrant an investigative stop pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This court has similarly held that an investigative stop based upon an anonymous tip may be valid if sufficiently corroborated. State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1978), affirmed, 387 So.2d 963 (Fla. 1980). However, it is abundantly clear from an analysis of all the cases that even after an anonymous tip is sufficiently corroborated to warrant an investigative stop, a search or an arrest of a person so detained is not authorized absent the discovery of evidence sufficient to establish in the mind of the detaining officer probable cause to believe that the detainee is engaged in criminal activity or that there are outstanding warrants for the arrest of the detainee. The confusion that is becoming increasingly apparent *1061 to us rests in the nature of the corroboration necessary to validate an anonymous tip to support a search or arrest.
It is not sufficient merely to corroborate the anonymous information concerning the identity, dress, description, location or even future activity of the suspect who is the subject of the anonymous information. In addition to independent evidence verifying that type of information, there must also be independent evidence of criminal activity on the part of the suspect. Otherwise, any totally innocent person could be the object of an anonymous tip furnishing verifiable information about name, description, whereabouts and future activity. When that type of verifiable information is furnished together with unverifiable allegations of criminal activity, a detention and search of a person so anonymously informed against is not authorized. There must be independent evidence of criminal activity apart from the otherwise verified anonymous tip to support a search of the described suspect. It is the lack of any independent evidence of criminal activity on the part of appellant before he was searched that causes us to find that the trial judge erred in denying appellant's motion to suppress. At the time appellant was first searched, the investigating officers had verification of nothing other than his name, description, clothing and location. A search at that point in time without evidence of criminal activity on the part of appellant was improper. Neither did the fact that "Wally" began to flee from the scene give the officers, without more, authority to search appellant who had done nothing to create in the minds of the officers concern for their safety or evidence that appellant was engaged in criminal activity. Neither can the subsequent discovery of cocaine in appellant's automobile survive the motion to suppress because it too was tainted by the initial improper search and resulting arrest of appellant.
We distinguish this case from this court's decisions in Trotman v. State, 581 So.2d 599 (Fla. 2d DCA 1991) and Jones, cited by the trial court. Neither Trotman nor Jones involved a true anonymous tip as this case does. The tipster in Trotman identified himself as "Junior," an informant known to the officers involved in Trotman as a person who had, on other occasions, furnished the officers with reliable information. Those officers not only recognized "Junior" by name, but they recognized his voice. Similarly, the confidential informant in Jones had been used previously and had proved reliable. Therefore, in Trotman and Jones, we had an identified, reliable informant as opposed to an informant in the case before us now who is completely unknown and, therefore, unreliable.
We reverse the order of the trial judge and remand with instructions that appellant be discharged from the charges which are the subject of this appeal.
SCHEB, A.C.J., concurs.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, specially concurring with opinion.
I concur in this opinion, but note my dissent in Trotman. Thus, I cannot fully distinguish Trotman. Both cases involve informants who were anonymous in the sense that their legal names and locations were unknown and they could not be subpoenaed to provide testimony.