682 So.2d 1168 (1996)
The STATE of Florida, Appellant,
v.
Ruben Francisco GONZALEZ, Appellee.
No. 95-1407.
District Court of Appeal of Florida, Third District.
October 30, 1996.
Rehearing Denied November 27, 1996.
*1169 Robert A. Butterworth, Attorney General, and Consuelo Maingot, Assistant Attorney General, for appellant.
Douglas L. Williams, Miami, for appellee.
Before BARKDULL, NESBITT and COPE, JJ.
COPE, Judge.
The State appeals the trial court's order granting defendant Ruben Francisco Gonzalez' motion to suppress evidence discovered after the stop of a vehicle in which defendant was a passenger. We conclude that the police officers had a reasonable suspicion to make an investigatory stop in this case, and reverse the suppression order.
At 3:04 a.m. on October 29, 1994, a citizen called the 911 emergency telephone line to report that she was observing two white males carrying items of property out of a neighboring house and loading them into a white van.[1] The property appeared to be stoves or similar items. An address was given, which was in a development called Poinciana Homes at Lago Mar. The caller stated that she did not want to identify herself, because she did not want a police car to come to her house. She was concerned that the persons she was observing would then know that she had made the telephone call to 911.
At 3:09 a.m. the police dispatcher broadcast a message to a car which was in the vicinity of Poinciana Homes, and advised the two officers in the car that there was a theft in progress. The dispatcher evidently still had the caller on the other line, and told the officers that the two individuals had just left in the white van.
One of the officers testified that a large number of homes were being constructed in the Poinciana development. There had been burglaries of air-conditioning units and other appliances from that development, some of which the officer had investigated personally. The officer also said that the police had information that a white van had been used in the earlier burglaries and that detectives in the investigation unit had been looking for a white van.
After receiving the message from the police dispatcher, the officers drove toward Poinciana Homes. At 3:13 a.m., at a four-way stop the officers encountered a white van being driven by two white males, coming from the direction of Poinciana Homes. The officers stopped the van and ordered the two passengers out. From the outside of the van the officers could see two air-conditioning *1170 units through the rear window. Defendant was a passenger in the van.
The officers asked the driver for his license and he indicated that it was in the van. He gave consent for the officers to retrieve the license from the van, which consent the trial court found to be voluntary. With the door open the officer could see fifteen or so five gallon drums marked Poinciana, Lago Mar. Defendant and the driver were placed under arrest.
Defendant moved to suppress the evidence obtained as a result of the stop. Defendant argued that there was no reasonable suspicion which would justify an investigatory stop in this case. The trial court ruled in defendant's favor and the state has appealed.
"An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion...." Ornelas v. United States, ___ U.S. ___, ___, 116 S.Ct. 1657, 1660, 134 L.Ed. 2d 911, 917 (1996) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); see also § 901.151, Fla. Stat. (1993).
The Supreme Court has said:
[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause.
The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or `hunch.'" The Fourth Amendment requires "some minimal level of objective justification" for making the stop.
United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989) (citations omitted). "Reasonable suspicion" is a less demanding standard than that for probable cause, and "considerably less than proof of wrongdoing by preponderance of the evidence." Id. (citations omitted).
The Court has also said:
The concept of reasonable suspicion, like probable cause, is not "readily, or even usefully, reduced to a neat set of legal rules." ... In evaluating the validity of a stop such as this, we must consider "the totality of the circumstancesthe whole picture." ...
"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the sameand so are law enforcement officers."
Id. (citations omitted). See also Saturnino-Boudet v. State, 682 So.2d 188, 189-192 (Fla. 3d DCA 1996); State v. Russell, 659 So.2d 465, 467 (Fla. 3d DCA), review denied, 665 So.2d 220 (Fla.1995); Franklin v. State, 374 So.2d 1151, 1152-53 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1113 (Fla.1980); State v. Stevens, 354 So.2d 1244, 1246-47 (Fla. 4th DCA 1978).
We conclude that reasonable suspicion was clearly shown to exist in this case.[2] A citizen called the 911 emergency line to report that two men were removing what appeared to be appliances from a neighboring house into a white van at 3:00 a.m. The caller gave the dispatcher the address. The address was in a subdivision which had numerous new homes under construction and which had an ongoing problem with theft of air-conditioners and other appliances. Investigators working on the earlier burglaries were already looking for a white van.
The dispatcher broadcast a message at 3:09 a.m., at which time the dispatcher also advised that the van had driven away from the site of the apparent theft. The police officers who received the message proceeded toward Poinciana Homes, and within four minutes encountered the white van on one of the roads which leads away from the development. These facts were more than enough to establish a reasonable suspicion to support a stop for investigatory purposes.
*1171 The defendant seeks to defeat reasonable suspicion by arguing that the caller's observations could be consistent with innocent activity. It is, of course, theoretically possible that the owner or developer of the home in question might choose to move large objects out of the home into a white van at 3 o'clock in the morning, but that theoretical possibility is not the point. Defendant's argument misconceives the legal standard. The question is not whether the facts known to the officers establish defendant's guilt beyond a reasonable doubt. The question under consideration is whether there were facts which, taken as a whole, constituted reasonable suspicion so as to allow an investigatory stop.
The Supreme Court has explained that reasonable suspicion is not necessarily defeated because the suspicious activity being observed is consistent with innocent activity. As explained in United States v. Sokolow:

Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion. We said in Reid v. Georgia, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam), "there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." Id. at 441, 100 S.Ct., at 2754. Indeed, Terry itself involved "a series of acts, each of them perhaps innocent" if viewed separately, "but which taken together warranted further investigation" 392 U.S., at 22, 88 S.Ct., at 1881. We noted in [Illinois v.] Gates, 462 U.S. [213], at 243-244, n. 13, 103 S.Ct. [2317], at 2335 n. 13, [76 L.Ed.2d 527, at 552 (1983),] that "innocent behavior will frequently provide the basis for a showing of probable cause," and that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is `innocent' or `guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." That principle applies equally well to the reasonable suspicion inquiry.
490 U.S. at 9-10, 109 S.Ct. at 1586-87 (citations and footnote omitted; emphasis added). Although theoretically possible that this was the owner's 3:00 a.m. moving party, common experience teaches that the probabilities were otherwise and a stop for investigation was reasonable in the circumstances.
The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616-17 (1972) (citations omitted).
Defendant also argues that the description of the van was too vague because it only stated that there was a white van occupied by two white males. Defendant contends that there must have been other white vans occupied by two white males on the streets of Dade County at 3 o'clock in the morning, and that no stop was justified. To the contrary, the description was white van, occupied by two white males, leaving Poinciana Homes just after 3:00 a.m. The van was promptly spotted and stopped in a place which was consistent with that information. The description was sufficient. See Franklin v. State, 374 So.2d at 1152; see also Persaud v. State, 659 So.2d 1191, 1192 (Fla. 3d DCA 1995), review denied, 667 So.2d 775 (Fla. 1996). The fact that another vehicle might fit the same description did not defeat the reasonable suspicion. See generally 4 Wayne R. LaFave, Search and Seizure § 9.4(g) (3d ed. 1996).
Defendant argues that affirmance is required by State v. Diaz, 595 So.2d 969 (Fla. 3d DCA 1992), but that case is distinguishable. In Diaz an officer received an anonymous tip that a pickup truck would be driving on 136 street in Dade County, carrying cocaine. The officer went to 136 street, saw a pickup truck, and stopped it. Id. at 970.
*1172 The question in Diaz was whether the stop was good when measured by the standards of Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In Alabama v. White, the Supreme Court considered the circumstances under which an anonymous tip could supply the reasonable suspicion necessary for an investigatory stop. 496 U.S. at 328, 110 S.Ct. at 2415. The problem addressed by court was that "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is `by hypothesis largely unknown and unknowable.'" Id. at 329, 110 S.Ct. at 2415 (citation omitted). The court added an important caveat: "This is not say that an anonymous caller could never provide the reasonable suspicion necessary for a Terry stop." Id.
The tip in Alabama v. White was that White would leave her apartment at a particular time in a particular vehicle with an ounce of cocaine in an attaché case, and would drive to a particular motel. The information given by the anonymous tipster did not explain how the tipster knew that White would be carrying cocaine at this particular time, nor was there a means by which to assess the credibility of the tipster.
The Court explained that "[r]easonable suspicion ... is dependent upon both the content of information possessed by police and its degree of reliability. Both factors quantity and qualityare considered in the `totality of the circumstancesthe whole picture'...." Id. at 330, 110 S.Ct. at 2416 (citations omitted). "Thus, if a tip has a relatively low degree of reliability, more information would be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Id.
The Alabama v. White court placed its reliance on the proposition that if "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." Id. at 331, 110 S.Ct. at 2417. The Court concluded that because the anonymous tipster had given sufficiently detailed information about White's activities, including predicted time of departure, car, and destination, there was a reasonable suspicion and the stop was justified. Id. at 331-32, 110 S.Ct. at 2417.
When applying the principles of Alabama v. White, to the facts set forth in State v. Diaz, this Court likewise dealt with an anonymous tip. Unlike the situation in Alabama v. White, the Diaz tip only indicated that a pickup truck would be driving in a particular direction on 136 street during business hours. We concluded that, under all the circumstances, the tip had not been sufficiently particularized to satisfy the test of Alabama v. White.
The present case differs markedly from Diaz. In the present case the source of the information was a citizen caller to the 911 emergency line. The telephone call, which was tape recorded, clearly indicates that the caller is a neighbor of the house being burglarized, and makes equally clear that the caller is describing to the police dispatcher exactly what she is observing, while she observes it. Furthermore, the Poinciana Homes development had an ongoing problem with burglaries of the homes that were then under construction, and in fact, the police officers knew that the detectives investigating the burglaries were already looking for a white van in connection with the earlier crimes. When the "whole picture" is considered, there was more than enough reasonable suspicion to support the investigatory stop.
The order suppressing evidence is reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] The 911 tape was introduced into evidence and played at the hearing on the motion to suppress.
[2] Based on the recent decision of the United States Supreme Court in Ornelas, ___ U.S. at ___, 116 S.Ct. at 1663, we follow a de novo standard of review. Saturnino-Boudet v. State, 682 So.2d at 192 n. 6.