721 So.2d 1202 (1998)
The STATE of Florida, Appellant,
v.
Carl Anthony CLARK, Appellee.
Nos. 97-3082.
District Court of Appeal of Florida, Third District.
December 2, 1998.
*1203 Robert A. Butterworth, Attorney General, and Terri Leon-Benner, Assistant Attorney General, and Giuseppina Miranda, Certified Legal Intern, for Appellant.
Bennett H. Brummer, Public Defender, Amy D. Ronner, Special Assistant Public Defender, and Brett A. Barfield and Ana Avrasin, Certified Legal Interns, for Appellee.
*1204 Before COPE, GREEN and FLETCHER, JJ.
COPE, J.
The state appeals an order granting suppression of evidence. We reverse.
At 2:30 a.m. on September 16, 1996, the Metro-Dade police department received a call from a homeowner reporting a burglary in progress at his home, which was located in the San Souci area of Miami-Dade County. As the result of the call, the police issued a "be-on-the-lookout" or BOLO notice for a stocky black man wearing a long-sleeved sweatshirt in the San Souci area. Within ten minutes of the BOLO, police stopped defendant five blocks from the location of the burglary. Defendant is a stocky black man who, at the time he was stopped, was wearing a short-sleeved t-shirt with lettering on it.
Immediately after defendant was stopped, the detaining officer conducted a frisk of defendant and retrieved a knife. Defendant gave conflicting statements as to his reasons for being in the area at that time of night. While defendant was being questioned, other police officers were conducting a sweep of the San Souci area. That neighborhood is fairly isolated and has a limited number of points of entry. The police saw no other persons in the area. After questioning defendant for a short time, the police noticed a red residue on his pants. They radioed the officers who were at the location of the attempted burglary and learned that the home had a red fence around it, and that the perpetrator had last been seen scaling the fence.
Defendant was read his Miranda[1] rights, arrested, and searched. The second search turned up a pair of gloves and a jar of Vaseline. Shortly thereafter, the homeowner came to the site of the arrest and identified defendant as the perpetrator.
Defendant was charged with burglary of an occupied structure and possession of burglary tools. Defendant moved to suppress all the items discovered during the initial frisk and the later search. Defendant argued that the initial stop was improper because he did not match the BOLO description, and that there was no probable cause for either the frisk or the search. The trial court granted the motion to suppress the evidence and the State has appealed.

I.
The trial court ruled, and we agree, that defendant was lawfully detained in response to the BOLO broadcast. Defendant contends on this appeal that the trial court erred in so holding, but defendant's position is without merit.
Here, a homeowner called the police at 2:30 a.m. to report that a burglary had been committed at his home and that he had seen the perpetrator leaving the property. Within ten minutes, the police stopped defendant five blocks from the burglary location. The defendant's physical appearance was reasonably consistent with the physical description given by the homeowner.[2] Defendant *1205 was the only one on the streets in the neighborhood at 2:30 in the morning. Under the circumstances, the stop was more than amply supported by a reasonable suspicion. See Blanco v. State, 452 So.2d 520, 522-23 (Fla.1984); State v. Gonzalez, 682 So.2d 1168, 1170 (Fla. 3d DCA 1996), review denied, 689 So.2d 1069 (Fla.1997); State v. Reyes, 680 So.2d 1092 (Fla. 3d DCA 1996); Persaud v. State, 659 So.2d 1191, 1192 (Fla. 3d DCA 1995); State v. Russell, 659 So.2d 465, 467 (Fla. 3d DCA 1995); State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978) § 901.151, Fla.Stat. (1997); see also Hunter v. State, 660 So.2d 244, 249 (Fla.1995).[3]

II.
As to the initial frisk, defendant argued, and the trial court agreed, that it was improper because there was no evidence that the officer conducting the frisk had any particularized reason to believe defendant was armed. The officer who conducted the pat-down did not testify at the hearing and the supervising officer who did testify had no knowledge of this issue. The trial court concluded that in the absence of such evidence, the frisk was improper.
Although not called to the trial court's attention below, case law has made clear that a protective pat-down is proper whenever a suspect "`has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed, whether the weapon would be used to actually commit the crime, to escape if the scheme went awry, or for protection against the victim or others involved.'" Quevedo v. State, 554 So.2d 620 (Fla. 3d DCA 1989) (quoting 3 LaFave, supra § 9.4(a), at 506 (2d ed.1987)). This court has held that such a protective pat-down is proper where the suspected crime is burglary. See 554 So.2d at 620.
As the Quevedo argument was not brought to the trial court's attention, it is not preserved for appellate review. Nevertheless, we reverse the order suppressing the knife on the grounds set forth in part III because it is clear that even if a protective pat-down had not been conducted, the knife would have been discovered as a part of the search incident to arrest which later properly occurred.

III.
In addition to finding that the police improperly frisked defendant, the trial court found that the police had never obtained probable cause to arrest defendant and that the second search of defendant was therefore not a search incident to arrest. We disagree with that conclusion as well.
Here, the defendant was detained ten minutes after the homeowner called the police. The defendant was only five blocks from the burglary scene and matched the description given by the homeowner. It was 2:30 a.m. in a secluded neighborhood, and no one else was in the area. Defendant was nervous, sweaty, and gave conflicting explanations for being in the area. Upon observing a red stain on defendant's pants, the officers learned that the crime victim had a red fence and that the perpetrator had fled by climbing over that fence. These facts established probable cause to arrest the defendant. "Probable cause to arrest exists when the totality of the facts and circumstances within the officer's knowledge would cause a reasonable person to believe that an offense has been committed and that the defendant is the one who committed it." State v. Russell, 659 So.2d 465, 468 (Fla. 3d DCA 1995) (citations omitted).
In finding no probable cause here the trial court relied on a portion of Cunningham v. State, 591 So.2d 1058 (Fla. 2d DCA 1991), *1206 which states, "There must be independent evidence of criminal activity apart from the otherwise verified anonymous tip to support a search of the described suspect." Id. at 1061 (emphasis omitted). That case has no application here, for it involved an anonymous tip.
In Cunningham, police received an anonymous call that narcotics activity was taking place behind a particular bar and that two described men were involved. The police went to the bar and saw the two men, but observed no illegal actions. Nonetheless, the police detained the men and searched them. In that context, the Second District held the search to be invalid because there was no probable cause to believe that the men were engaged in criminal activity, nor was there a basis for a frisk. See id. at 1061. The officers saw no illegal activity and the anonymous tip could not, standing alone, provide probable cause.
In the present case, we are not dealing with an anonymous tip. Instead, this case involves a report of crime by the citizen victim, who called the police. Here, there is an identified caller, and it is well-settled that citizen information need not be independently verified. See State v. Reyes, 680 So.2d 1092 (Fla. 3d DCA 1996); Persaud v. State, 659 So.2d 1191, 1192 (Fla. 3d DCA 1995). The citizen had observed the crime and provided a description of the perpetrator. Given that information plus the other factors already discussed, there was probable cause to arrest the defendant and search him incident to that arrest.
The trial court also expressed concern that the record was unclear about when defendant was formally placed under arrest, and that the search might have occurred before defendant was formally arrested. That is not, however, a basis for suppression. "The validity of a search of a defendant after probable cause to arrest him has arisen is unaffected by the fact that the search comes before the arrest." State v. James, 526 So.2d 188, 190 (Fla. 3d DCA 1988); see State v. Joseph, 593 So.2d 594, 595 (Fla. 3d DCA 1992), and cases cited therein.
Finally, assuming arguendo that there was no probable cause to arrest the defendant until the homeowner came to the site of the stop and identified him, the evidence should not have been suppressed. "[T]he exclusionary rule will not be applied where it can be shown that, had the evidence in question not been obtained by the challenged police conduct, it `ultimately or inevitably would have been discovered by lawful means.'" Craig v. State, 510 So.2d 857, 862 (Fla.1987) (quoting Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).
The order under review is reversed and the cause is remanded with directions to deny the motion to suppress.
Reversed and remanded.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] When stopped, defendant was wearing a short-sleeved t-shirt instead of a long-sleeved sweatshirt. The supervising officer testified that it was his experience, as a fourteen-year veteran, that burglars most often strip off an article of clothing once they have been seen. It is proper for the police to take account of the "possibility that by a change of circumstances or efforts at concealment some aspects of the description may no longer be applicable." 4 Wayne R. LaFave, Search and Seizure § 9.4(g), at 202 & n. 316 (3d ed.1996) (footnote omitted).

Professor LaFave also notes:
One question which sometimes arises with regard to the requisite particularity of a description to justify stopping a person for investigation in connection with a recently committed crime is this: when there are several points of comparison possible as a result of the description, may a person ever be lawfully stopped even though he does not match up on all points? The answer is yes, for the investigating officers must be allowed to take account of the possibility that some of the descriptive factors supplied by victims or witnesses may be in error. What must be taken into account is the strength of those points of comparison which do not match up and whether the nature of the descriptive factors which do not match is such that an error as to them is not improbable...
Id. at 201 (footnotes and citation omitted).
[3] According to Professor LaFave:

Generally, it may be said that consideration may properly be given to: (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.
4 LaFave, supra, § 9.4(g), at 195.