725 So.2d 1240 (1999)
R.A., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 98-521.
District Court of Appeal of Florida, Third District.
January 27, 1999.
Rehearing Denied March 3, 1999.
*1241 Bennett H. Brummer, Public Defender, and Frank C. Simone, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Richard L. Polin, Assistant Attorney General, and Maria Elena Perez, Jr., Certified Legal Intern, for appellee.
Before SCHWARTZ, C.J., and SHEVIN and SORONDO, JJ.
SORONDO, J.
R.A. appeals from a withhold of adjudication for petit theft and trespass after entry of a plea of nolo contendere reserving the right to appeal the denial of his motion to suppress.
The state charged R.A. with burglary of an unoccupied structure, criminal mischief and grand theft. R.A. filed a motion to suppress. At the suppression hearing, Officer Hernandez testified that at 1:40 a.m. on Saturday, May 10, 1997, a police radio dispatch was issued stating that a citizen advised that several juveniles were breaking into Kensington Elementary School. An attempt was made to contact the caller, but the caller did not wish to be reached. The dispatch did not specify anything about the juveniles or where they were in the school. Officer Hernandez was familiar with the area and responded based on his knowledge to 9th Street, which dead-ended into the fence at the back of the school.
Within a minute of the dispatch, Officer Hernandez saw five males and two females, who appeared to be juveniles, about one half a block away from the school. He did not observe the children engaged in criminal activity but exited his vehicle, drew his weapon and ordered them to place their hands against the car. Hernandez testified that he stopped the children, "because they're coming from behind the school [that] was just burglarized." Hernandez testified that the children were a little bit nervous and that R.A. was wearing baggy clothing.
As other officers arrived on the scene, Officer Hernandez conducted a pat-down of the children. He had no information that they were armed and did not see any weapons. Hernandez patted them down for the safety of all present because he had responded regarding a burglary in progress. Hernandez testified that he conducts a pat-down search every time he stops someone for a "hot call," which is a violent in-progress call such as a burglary or an assault. During the pat-down, Officer Hernandez felt a long, hard object in R.A.'s pocket. Hernandez proceeded to remove the item, which he believed was a weapon. Hernandez recovered pencils, markers and crayons from R.A.'s pocket.
The lower court denied the motion to suppress. The court found that given the time of night and the anonymous call the police had received, the officer was justified in stopping the juveniles found in back of the school. The court found further that once the officer stopped them, he was justified in searching to see if they were armed.
The question presented is whether the anonymous tip received by the police and transmitted to Officer Hernandez was sufficient to give rise to a reasonable suspicion sufficient to justify R.A.'s detention. On the authority of L.M. v. State, 694 So.2d 118 (Fla. 3d DCA 1997), we conclude that it was not and reverse.
The law is clear that "an anonymous tip can give rise to a reasonable suspicion sufficient to justify the temporary detention of a citizen," Id. at 119, "when the tip, as corroborated by independent police work, exhibits sufficient indicia of reliability to furnish police with a reasonable suspicion that the defendant is engaged in criminal activity." Butts v. State, 644 So.2d 605, 606 (Fla. 1st DCA 1994), approved, J.L. v. State, 727 So.2d 204, 23 Fla. L. Weekly S626 (Fla.1998). See also Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); Fuller v. State, 658 So.2d 1202 (Fla. 2d DCA 1995); *1242 State v. Diaz, 595 So.2d 969 (Fla. 3d DCA 1992); Powell v. State, 592 So.2d 785 (Fla. 2d DCA 1992); State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), opinion adopted, 387 So.2d 963 (Fla.1980). "The `totality of the circumstances' test is used to determine the requisite level of suspicion.... The reliability of an anonymous tipster's information is evaluated in part on its degree of specificity and in part on the independent corroboration of significant aspects of the informant's predictions." Butts, 644 So.2d at 606. See also Swanson v. State, 591 So.2d 1114, 1116 (Fla. 1st DCA 1992).
The present case is similar to L.M., where this Court concluded that the absence of independent police corroboration required the granting of the respondent's motion to suppress. As in L.M., the police received an anonymous tip of a burglary in progress; they responded immediately and discovered suspects within one-half block of the alleged burglary; finally, they did not see any illegal conduct when they observed the suspects and were consequently unable to corroborate any of the information contained in the tip. In L.M., the tip found to be insufficient by this Court identified the suspects as two black males and provided a clothing description. In the present case, the entirety of the tip advised police that "several juveniles were breaking into the Kensington Elementary School." There was no physical description of the people involved, nor was there a clothing description. The anonymous tip in this case is therefore less specific than the one found to be legally insufficient to justify a stop in L.M. It follows, therefore, that R.A.'s motion to suppress should have been granted.
The state argues that the tip in this case did not come from an "anonymous informant" but rather from a "citizen informant."[1] This being the case, the argument goes, the tip was more reliable and consequently sufficient to justify R.A.'s temporary detention. See Grant v. State, 718 So.2d 238 (Fla. 2d DCA 1998); State v. Gonzalez, 682 So.2d 1168 (Fla. 3d DCA 1996), review denied, 689 So.2d 1069 (Fla.1997). Although the testimony presented below might have been sufficient to establish that the tip came from a concerned citizen, there was also testimony elicited during cross-examination of Officer Hernandez that it was from a completely anonymous source. Unfortunately for the state, the trial judge ultimately resolved the conflict by characterizing it as an anonymous tip and not one from a concerned citizen. He then proceeded to incorrectly conclude that the stop was proper. Because we conclude that the stop was unlawful, we do not reach the issue of the pat-down or the subsequent search.
The dissent, a masterpiece of hyperbole, suggests that the effect of this decision will be to discourage citizens from informing police about ongoing crimes, and encourage officers not to bother with the R.A.'s of the worldnothing could be further from the truth. Beyond the obvious consequences of our decision for the state and R.A., this case re-establishes what many search and seizure cases have reminded us of in the past, that the preservation of certain constitutional principles sometimes results in the escape of a scoundrel. This is old news. See Rakas v. Illinois, 439 U.S. 128, 137, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("[E]ach time the exclusionary rule is applied it exacts a substantial cost for the vindication of Fourth Amendment rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected"); Stone v. Powell, 428 U.S. 465, 490, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) ("Application of the [exclusionary] rule thus deflects the truth-finding process and often frees the guilty"); Kopf v. Skyrm, 993 F.2d 374, 379-80 (4th Cir.1993) ("One who would defend the Fourth Amendment must share his foxhole with scoundrels of every sort, but to abandon the post because of the poor company is to sell freedom cheaply"); Owens v. State, 322 Md. 616, 589 A.2d 59, 67 (Md.1991) ("[I]n order to safeguard that most fundamental value of `[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' *1243 it is sometimes necessary that the scoundrel go free").
The dissent's reliance on Aguilar v. State, 700 So.2d 58 (Fla. 4th DCA 1997), and State v. Gonzalez, 682 So.2d 1168 (Fla. 3d DCA 1996), is misplaced. In Gonzalez, this Court determined that the tip in question was provided by a citizen informant. As suggested by the state in its brief, Gonzalez stands for the proposition that a tipster can qualify for treatment as a citizen informant, even when his or her identity is not established, if it is clear that the tipster is, in fact, a citizen informant. In Gonzalez, the call was made to the 911 operator, a call most people know is tape recorded and traceable by police. The caller, who the opinion indicates was clearly a neighbor of the home being burglarized, described the burglary in a manner which clearly reflected that she was describing exactly what was happening, as it was happening. Id. at 1172. The present case is distinguishable in that the record does not indicate whether the call in question was made to the 911 operator, there is no indication that the call was tape recorded, the tip was extremely brief and did not provide the richness of detail contained in the Gonzalez tip, and there is no indication that the caller was a neighbor or other innocent person.
In Aguilar, a thirteen or fourteen year old boy approached police officers while they were standing in a trailer park speaking to the manager and advised them that he had seen a man with a gun enter a convenience store on the park property. Although the officers did not know the boy's name, they knew him from the neighborhood. The boy identified the defendant and a pat-down by police revealed the gun. The Fourth District Court of Appeal concluded that although the officers may not have known the boy's name, his identity was "readily discoverable" and he should therefore be characterized as a citizen-informant. Aguilar, 700 So.2d at 59. Aguilar is also clearly distinguishable from the present case. There is nothing in this record which suggests that the police knew or could easily determine the identity of the informant. Indeed, Officer Hernandez testified that the tipster refused to be identified in any way. Additionally, in Aguilar, the informant approached the police in person. He made no effort to conceal his identity and undoubtedly knew that he could be instructed to remain on the scene and be listed as a witness.
If the public is to infer a message from this opinion beyond that which we intend, i.e. that the detention of R.A. under the circumstances of this case was unlawful, the message should be that the cause of fighting crime requires courage on the part of all citizens, not just police officers. Had the anonymous tipster in this case identified himself or herself, we would be in a position to affirm the trial court's denial of R.A.'s motion to suppress, because the tip would then have possessed the necessary reliability to justify R.A.'s temporary detention. See State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997) ("Not only was [the tipster] an identified informant, rather than an anonymous one, but she qualifies as a `citizen informant,' whose information is at the high end of the tip-reliability scale."). That done, the case would have proceeded to trial for a determination on the merits. The citizen informant could then have testified at the trial and assisted law enforcement in securing an adjudication of guilt, assuming that the necessary quantum of evidence was presented. The informant's decision to render only partial cooperation, and the events that followed, combined to doom this prosecution. It is not our function to mutilate the Fourth Amendment so as to allow a more palatable result in any single case.
We reverse the order denying R.A.'s motion to suppress and remand with instructions to discharge him.
SHEVIN, J., concurs.
SCHWARTZ, Chief Judge (dissenting).
At about 1:40 in the morning, literally within minutes after a telephoned report that several juveniles were breaking into a public school, police arriving at the otherwise deserted scene saw several juveniles emerging from a dead end street a short distance from the school where the investigating officer knew that any burglars might attempt to escape. As a matter of common sense and *1244 therefore of the law, it seems obvious to meand I believe that any member of the public, much less any law enforcement officer, would be astonished to learn to the contrarythat under the "totality of the[se] circumstances," there was more than a mere hunch or wild surmise but rather a reasoned and well-founded suspicion that the juveniles they saw had committed the reported crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Tamer v. State, 484 So.2d 583 (Fla.1986); Grant v. State, 718 So.2d 238 (Fla. 2d DCA 1998); Aguilar v. State, 700 So.2d 58 (Fla. 4th DCA 1997); State v. Gonzalez, 682 So.2d 1168 (Fla. 3d DCA 1996), review denied, 689 So.2d 1069 (Fla.1997); State v. Novak, 502 So.2d 990 (Fla. 3d DCA), review denied, 511 So.2d 299 (Fla.1987); see also State v. Mitchell, 722 So.2d 907 (Fla. 3d DCA 1998) (determination of "founded suspicion" turns on realistic view of actual situation). It is therefore all the more obviously impossible to agree with the court's conclusion, in reversing the presumptively correct determination of the trial court to this effect, McNamara v. State, 357 So.2d 410 (Fla.1978), that the opposite is true as a matter of law. In my view, the effect of the majority's opinion is to inform members of the public that they should not bother to tell the police about ongoing crimes unless they verify their reliability, and to tell the police either that it should not respond to any information which is not judicially deemed reliable, or, if it does, that its officers must stand aside and permit persons like R.A. and his associates to go on about their business unmolested lest their constitutionally-protected rights to escape from the scene of the crime be interfered with in any way. If, as is often said nowadays, what we do "sends a message" to members of the community, these are very bad messages to send, indeed.
I therefore believe, with the trial court, that the Terry stop was appropriate. Because our decisions, Quevedo v. State, 554 So.2d 620 (Fla. 3d DCA 1989); see State v. Clark, 721 So.2d 1202 (Fla. 3d DCA 1998), establish that such a stop for suspected burglary justifies a pat-down, which, in this case, to the surprise of no one (but the majority) actually yielded the fruits of the suspected offense,[2] I would affirm.
NOTES
[1] "A citizen-informant is one who is `motivated not by pecuniary gain, but by the desire to further justice.'" State v. Talbott, 425 So.2d 600, 602 n. 1 (Fla. 4th DCA 1982) (quoting Barfield v. State, 396 So.2d 793, 796 (Fla. 1st DCA 1981)).
[2] I know this fact is totally irrelevant, but I thought I would mention it, anyway.