SCHWARTZ, Chief Judge
(dissenting).
At about 1:40 in the morning, literally within minutes after a telephoned report that several juveniles were breaking into a public school, police arriving at the otherwise deserted scene saw several juveniles emerging from a dead end street a short distance from the school where the investigating officer knew that any burglars might attempt to escape. As a matter of common sense and *1244 therefore of the law, it seems obvious to me — and I believe that any member of the public, much less any law enforcement officer, would be astonished to learn to the contrary — that under the “totality of the[se] circumstances,” there was more than a mere hunch or wild surmise but rather a reasoned and well-founded suspicion that the juveniles they saw had committed the reported crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Tamer v. State, 484 So.2d 583 (Fla.1986); Grant v. State, 718 So.2d 238 (Fla. 2d DCA 1998); Aguilar v. State, 700 So.2d 58 (Fla. 4th DCA 1997); State v. Gonzalez, 682 So.2d 1168 (Fla. 3d DCA 1996), review denied, 689 So.2d 1069 (Fla.1997); State v. Novak, 502 So.2d 990 (Fla. 3d DCA), review denied, 511 So.2d 299 (Fla.1987); see also State v. Mitchell, 722 So.2d 907 (Fla. 3d DCA 1998) (determination of “founded suspicion” turns on realistic view of actual situation). It is therefore all the more obviously impossible to agree with the court’s conclusion, in reversing the presumptively correct determination of the trial court to this effect, McNamara v. State, 357 So.2d 410 (Fla.1978), that the opposite is true as a matter of law. In my view, the effect of the majority’s opinion is to inform members of the public that they should not bother to tell the police about ongoing crimes unless they verify their reliability, and to tell the police either that it should not respond to any information which is not judicially deemed reliable, or, if it does, that its officers must stand aside and permit persons like R.A. and his associates to go on about their business unmolested lest their constitutionally-protected rights to escape from the scene of the crime be interfered with in any way. If, as is often said nowadays, what we do “sends a message” to members of the community, these are very bad messages to send, indeed.
I therefore believe, with the trial court, that the Terry stop was appropriate. Because our decisions, Quevedo v. State, 554 So.2d 620 (Fla. 3d DCA 1989); see State v. Clark, 721 So.2d 1202 (Fla. 3d DCA 1998), establish that such a stop for suspected burglary justifies a pat-down, which, in this case, to the surprise of no one (but the majority) actually yielded the fruits of the suspected offense,[2]1 would affirm.

. I know this fact is totally irrelevant, but I thought I would mention it, anyway.