668 So.2d 280 (1996)
STATE of Florida, Appellant,
v.
Willie E. WIMBUSH, Appellee.
No. 95-00894.
District Court of Appeal of Florida, Second District.
February 16, 1996.
*281 Robert A. Butterworth, Attorney General, Tallahassee, and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellant.
David S. Hendrix and Nancy J. Neaves of The Law Office of David S. Hendrix, Tampa, for Appellee.
PATTERSON, Judge.
The state challenges the trial court's order suppressing cocaine found after a search of the car in which Willie Wimbush was a passenger. We agree with the state that the officer had a well-founded suspicion of criminal activity to detain the vehicle. Accordingly, we reverse the suppression order and remand for further proceedings.
The state charged Wimbush with possession of cocaine, and Wimbush filed a motion to suppress evidence, asserting that there was no well-founded suspicion to stop and detain the car in which he was a passenger. At the suppression hearing, Officer Gary Garboski with the Tampa Police Department testified that on August 19, 1994, he observed a Chevy Beretta parked on the access road of the Courtney Campbell Causeway at approximately 3:00 a.m. Officer Garboski pulled his patrol car alongside the Chevy and illuminated the passenger side with his alley light. The driver of the vehicle said "hello," the officer responded, and as the driver was looking at the officer, the officer observed a substance under the driver's nose.
Officer Garboski has received advanced training in narcotics identification, and as part of this training, has been taught the mannerisms of people under the influence of narcotics and how to identify narcotics. Based on the officer's experience and training, he believed the substance underneath the driver's nose to be powder cocaine. The officer pulled up behind the car and illuminated its interior with his spotlight. Officer Garboski and his partner then walked over to the car. Officer Garboski approached the driver's side and spoke with the driver, and in so doing, saw Wimbush in the back left passenger side with a powdery streak, approximately 2½ inches long and ½ inch wide, down the left side of his cheek. Based on the officer's experience and training, he believed the streak to be cocaine.
When he first approached the car, the officer asked the driver for identification. The officer observed the driver had mucus with a crystal white substance in it under his nose. During his training, the officer learned that when an individual ingests cocaine it causes mucus to run from the individual's *282 nose and sometimes the drug mixes with the mucus. Prior to this incident, the officer had noticed numerous people on the street under the influence of narcotics with the same substance under their noses.
When the officer approached the car and observed the substance on Wimbush's cheek, he did not say anything because he did not want Wimbush to wipe off the substance. Wimbush remained in the car while the officer called for a canine unit, and the officer did not tell the driver or Wimbush that they were under arrest before the canine unit arrived. The canine alerted to the interior of the vehicle, and a subsequent search revealed cocaine. A valtox test of the substance on Wimbush's cheek was positive for cocaine.
The trial court granted the motion to suppress, holding that the observations of law enforcement did not provide reasonable suspicion to detain the car and subsequently search it.
First, we note that the officers did not make a stop during the initial encounter. The car was parked on the access road to the Courtney Campbell Causeway at 3:00 a.m. The officers approached in their patrol car so that they could ask some questions, and this initial encounter was consensual. See State v. Carley, 633 So.2d 533, 534 (Fla. 2d DCA 1994) ("An officer does not need a founded suspicion of criminal activity to approach and talk to someone.").
Although the trial court's order does not contain any specific factual findings[1], the trial court apparently believed Officer Gabroski's testimony about seeing a substance under the driver's nose and a powdery streak on Wimbush's cheek. The officer testified that, based upon his experience and training in the detection of narcotics, he believed the substances to be powder cocaine. At the hearing, the trial court stated that the issue was whether there was "a well-founded suspicion of criminal activity, based upon those two individuals seated in the car with that evidence of contraband on their faces, in the absence of any other evidence." Thus, the trial court made a factual finding that the officer saw "evidence of contraband" on their faces. The record contains support for that factual finding. The court then came to the legal conclusion that the totality of circumstances did not provide the officer with a reasonable suspicion to detain Wimbush. We disagree with the trial court's legal conclusion.
To justify an investigative temporary detention, an officer must have a founded reasonable suspicion that the person has committed, is committing, or is about to commit a crime. § 901.151(2), Fla.Stat. (1993); Brown v. State, 636 So.2d 174 (Fla. 2d DCA 1994). A founded reasonable suspicion must "have some factual foundation in the circumstances observed by the officer when those circumstances are interpreted in light of the officer's knowledge." Peabody v. State, 556 So.2d 826, 827 (Fla. 2d DCA 1990). Here, the officer had a founded suspicion, based on his training and experience, that the individuals were involved in criminal activity because the officer observed what he believed to be powder cocaine on their faces. Thus, the detention until the arrival of the canine unit was proper.[2] Therefore, we reverse the order suppressing the cocaine and remand for further proceedings.
Reversed and remanded.
SCHOONOVER, A.C.J., and QUINCE, J., concur.
NOTES
[1] The suppression order states, "The Court specifically finds that the observations of law enforcement did not provide law enforcement with reasonable suspicion by which to detain and subsequently search the defendant and the vehicle he was seated in."
[2] The parties do not raise the issue of whether the length of the detention was reasonable. The record does not reveal how long the occupants were detained before the canine unit arrived.