685 So.2d 918 (1996)
Darrell JENKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 95-4565.
District Court of Appeal of Florida, First District.
December 17, 1996.
Rehearing Denied January 30, 1997.
*919 Nancy A. Daniels, Public Defender; Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Edward C. Hill, Jr., Assistant Attorney General, Tallahassee, for Appellee.
LAWRENCE, Judge.
Darrell Jenkins (Jenkins) appeals his judgment and sentence for burglary of a structure, asserting as error the following two issues: (1) the trial court's denial of his pretrial motion to suppress; and (2) the trial court's denial of his motion to have his case transferred from the habitual offender division to another felony division. We affirm as to both issues.
At the suppression hearing, Officer Schoonover testified that, at 12:55 a.m., he learned that a burglar alarm had gone off at a Radio Shack store. Within three to ten minutes of receiving the dispatch, while en route to the store, he saw Jenkins riding a bicycle in a direction away from the crime scene. Jenkins was about one to one and a half miles away from the crime scene. Schoonover saw that Jenkins was carrying a large, apparently solid object in a white bag tucked up underneath his arm. The area in which he was riding was largely a business district, with businesses closed at that hour. Officer Schoonover testified that it is not common to see people riding bicycles in that *920 area at that hour in the morning. He also testified that one of his officers had told him that an unidentified transient told him that the burglary problem they had been having in that area of town was being perpetrated by people on bicycles.
When Schoonover first saw Jenkins, he was "sitting down on the bike just pedaling normally." After he passed him, however, Schoonover observed Jenkins in his rearview mirror and saw him keep "turning around looking at [him]." Jenkins then stood up on his bike and started to pedal fast, in what appeared to be an attempt to get out of that area. Schoonover turned around and followed Jenkins, who made several turns. He then pulled alongside of Jenkins and told him to stop. Jenkins failed to stop and continued pedaling. Officer Schoonover then stopped him by pulling his car in front of Jenkins and blocking his path. As Officer Schoonover got out of his car, Jenkins stepped off of his bike, still clutching the bag. Schoonover asked him what he had in the bag and Jenkins responded by pulling the bag further away from the officer, as though he was trying to conceal its contents. Schoonover then looked inside the bag and saw two new-looking pieces of stereo equipment with the Radio Shack emblem on them. It was subsequently confirmed that this equipment belonged to the burglarized store.
The trial court denied Jenkins' motion to suppress, finding the stop was well-justified under the totality of the circumstances and that the officer acted reasonably in seizing the bag.
Jenkins argues the trial court erred in denying his motion to suppress because both the detention and the search were unlawful. He argues the officer lacked a reasonable suspicion to justify the investigatory stop. Even if the stop was valid, however, he argues the officer lacked probable cause to seize the bag he held. In response, the State argues the trial court properly denied Jenkins' motion to suppress as the totality of the circumstances justified the stop the officer made, and that this knowledge, together with Jenkins' furtive movements after the stop, provided legal cause to check the contents of the bag.
The trial court's ruling on a motion to suppress is presumptively correct and the reviewing court must interpret the evidence, reasonable inferences and deductions in a manner most favorable to sustaining the trial court's ruling. Johnson v. State, 608 So.2d 4, 9 (Fla.1992), cert. denied, 508 U.S. 919, 113 S.Ct. 2366, 124 L.Ed.2d 273 (1993). Under section 901.151, Florida Statutes (1995), an officer may temporarily detain an individual for investigative questioning if the officer has a reasonable suspicion based on articulable facts that the individual is committing, has committed, or is about to commit a crime.[1]Popple v. State, 626 So.2d 185 (Fla.1993)(citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In determining whether an officer possesses a founded suspicion of criminal activity to justify an investigatory stop, the totality of the circumstances must be taken into account. Moore v. State, 561 So.2d 625, 626 (Fla. 1st DCA 1990). The court may consider "the time of day, the day of the week, the location, the physical appearance and behavior of the suspect, the appearance and manner of operation of any vehicle involved or anything incongruous or unusual in the situation as interpreted in light of the officer's knowledge." Gipson v. State, 537 So.2d 1080, 1081 (Fla. 1st DCA 1989)(quoting State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978)).
On facts similar to those in this case, this court and two sister courts have found the officer had a founded suspicion of criminal activity to justify an investigatory stop. In Harris v. State, 574 So.2d 243 (Fla. 1st DCA *921 1991), the officer saw the defendant and a juvenile riding their bikes single file at about 2:00 or 2:30 a.m. in a light rain. The juvenile in front was carrying a small portable television on his handlebars. The two were found riding in the vicinity of a golf course, a housing subdivision, a trailer park, and several businesses, which were closed at that time of the morning. In State v. Jenkins, 566 So.2d 926 (Fla. 2d DCA 1990), the officer stopped the defendant, who was riding a bicycle at 1:30 a.m., coming from the business section of town, where there were no vehicles or activity or businesses open. The defendant was balancing a large cardboard box full of some sort of property and a plastic garbage bag "overflowing out of the box" on the handlebars. Finally, in State v. Russell, 659 So.2d 465 (Fla. 3d DCA), review denied, 665 So.2d 220 (Fla.1995), the court found the officer had a reasonable suspicion to stop the defendant after he saw him in an alleyway behind closed businesses at 6:00 a.m., when it was still dark. The area was an exclusively commercial district which had recent burglaries, and the defendant was carrying a heavy bag containing squared-off objects that appeared to be appliances.
Like the officers in Harris, Jenkins, and Russell, Officer Schoonover had a well-founded suspicion of criminal activity based on the totality of the circumstances. Jenkins was riding a bicycle at about 12:55 a.m. in an area that was primarily a business district, with the businesses all closed at that hour. There had been some recent burglaries in the area. Schoonover spotted Jenkins just one to one and a half miles away from a Radio Shack store that had been burglarized minutes earlier. Jenkins was carrying what appeared to be a solid, large object in a white bag under his arm. The size and shape of the bag's contents were consistent with the type of products sold at the burglarized store. After passing Schoonover's patrol car and continuing in the opposite direction, Jenkins behaved suspiciously by continually looking back at the patrol car and then standing up on his bike and pedaling faster, as if to get out of the area as quickly as possible. Based on all these facts, Officer Schoonover had a founded suspicion of criminal activity to justify the temporary detention of Jenkins.
Armed with this pre-stop knowledge, together with a close-up look at the bag (appearing to encase large solid objects consistent with those sold at a Radio Shack store) and Jenkins' post-stop furtive movements, we agree with the trial judge that Officer Schoonover had probable cause to search Jenkins' bag. "`Probable cause' means that the circumstances are such as to cause a person of reasonable caution to believe that an offense has been or is being committed by the person to be arrested." Bostick v. State, 554 So.2d 1153, 1155 (Fla. 1989), reversed on other grounds, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Considering all the circumstances leading up to the investigatory stop together with the fact that Jenkins did not put the bag down when he was finally stopped, and then pulled the bag away from the officer as if to conceal its contents, there was probable cause to believe that Jenkins was involved in the burglary that had occurred minutes earlier in that very area. Thus, we find the trial court properly denied his motion to suppress.
Turning to the second issue, Jenkins appeals the trial court's denial of his motion, in which he sought to have his case transferred from the habitual offender division, created by Administrative Order 88-21, to another felony division that does not specialize in habitual offender cases. He claims the creation of the habitual offender division constituted a subject matter "division," which under the Florida Constitution, must be created by local rule rather than by administrative order. Citing an unpublished order by the Florida Supreme Court, this court recently held that the felony offender divisions in question are not "divisions" within the meaning of article V, section 20(c)(10) of the Florida Constitution, and that Administrative Order 88-21 is properly within the administrative authority of the chief judge. Dennis v. State, 673 So.2d 881 (Fla. 1st DCA)(citing In Re: Administrative Order of the Fourth Judicial CircuitNo. 88-21 (Career Criminal Project), No. 81,017 (Fla. Mar. 11, 1993)), review denied, 680 So.2d 422 (Fla.1996). Accordingly, *922 we find the trial court did not err in denying Jenkins' motion.
Therefore, the judgment and sentence is AFFIRMED in all respects.
MICKLE, J., concurs.
WEBSTER, J., dissents with opinion.
WEBSTER, Judge, dissenting.
I am unable to agree that probable cause existed to justify the search of appellant's bag. In my opinion, the search of the bag was constitutionally impermissible and, therefore, the motion to suppress should have been granted. Because the parties agree that reversal of the order denying the motion to suppress would be dispositive, I would remand with directions that the case be dismissed.
The only witness to testify at the suppression hearing was the arresting officer. His testimony was that, some three to ten minutes after he had received a dispatch that an alarm had gone off at a Radio Shack store, he saw appellant riding a bicycle, approximately a mile to a mile and a half from the store. Appellant had a large white bag under his arm. The officer could not determine what was in the bag, other than that it appeared to be a large solid object. When the officer stopped appellant, all that he knew was that the store alarm had gone off, and that a window in the front of the store had been broken. Beyond this, there was nothing to suggest that any merchandise had been taken.
"In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects." Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 237 (1983). Rather, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." 460 U.S. at 500, 103 S.Ct. at 1325-26. Assuming, for purposes of argument, that the initial stop of appellant was a permissible investigative stop, I am able to find nothing in the officer's testimony to support a finding of probable cause sufficient to justify the subsequent search of the bag.
In my opinion, the officer's testimony is equally susceptible to two interpretations. The first possible interpretation is that, as soon as he had stopped appellant, the officer asked appellant what he had in the bag and, when appellant "attempted to pull the bag away," the officer "grabbed the bag and ... looked inside." As best I can determine, this is the interpretation placed on the testimony by the majority. Apparently, they are of the view that appellant's "post-stop furtive movements"i.e., his failure to "put the bag down when he was finally stopped" (notwithstanding that the officer conceded that he never asked appellant to put it down) and his act of "pull[ing] the bag away from the officer" are sufficient, when added to the circumstances justifying the investigative stop, to provide probable cause for the search. Notwithstanding this novel interpretation of the law, it seems to me relatively clear that, if this is what occurred, the search was prohibited by Royer. To accept the majority's gloss on fourth amendment law would, it seems to me, logically lead to the conclusion that probable cause exists for a search whenever a person chooses to exercise his or her fourth and fifth amendment rights by refusing to respond to such questioning. A search might have been justified in such circumstances had the officer had a legitimate fear that appellant was carrying a weapon in the bag. See, e.g., Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (restricted weapons search permissible following investigative stop if officer has reasonable grounds to believe suspect to be armed and dangerous). But see Lencsak v. State, 579 So.2d 882 (Fla. 2d DCA 1991) (assuming reasonable fear that bicyclist might be armed, search of paper bag he was carrying was not justifiable on that basis). However, the transcript is not susceptible to such a reading.
The second possible interpretation of the officer's testimony is that, after stopping appellant, the officer first asked for identification and an explanation why appellant was out and about at the hour. According to the *923 officer, appellant produced valid identification, and explained that he was on his way home from work at a nearby Quincy's restaurant. At this point, it seems to me that the purpose of the investigative stop had been served, and appellant should have been permitted to proceed on his way. Instead, the officer asked what appellant had in the bag and, when appellant pulled the bag away, the officer "grabbed" it and looked inside. I find this scenario equally lacking in any indication of probable cause to search the bag. See, e.g., J.R.H. v. State, 428 So.2d 786 (Fla. 2d DCA 1983) (search, or inquiry regarding contents, of bag not justified following investigative stop after defendant provided requested identification and reason for being in area).
In short, as I read the majority's justification for affirming the search of the bag, it is that probable cause was provided by (1) the circumstances which led to the investigative stop, (2) appellant's failure to "put the bag down when he was finally stopped" and (3) appellant's act of "pull[ing] the bag away from the officer" in response to the latter's attempt to look inside. Because such an analysis does not square with my understanding of what is required to establish probable cause to justify a search pursuant to the fourth amendment, I dissent.
NOTES
[1] Section 901.151(2), Florida Statutes (1995), provides in relevant part:

Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.