718 So.2d 238 (1998)
Mark Anthony GRANT, Appellant,
v.
STATE of Florida, Appellee.
No. 96-02505.
District Court of Appeal of Florida, Second District.
August 21, 1998.
Rehearing Denied September 24, 1998.
*239 Ralph E. Fernandez, Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Following a jury trial, Grant was convicted of burglary of a dwelling, grand theft, and possession of burglary tools. On appeal, he challenges the denial of his motion to suppress evidence seized after a stop of his vehicle, arguing that officers did not possess a reasonable suspicion of criminal activity to justify the stop. We affirm this issue for the reasons discussed in this opinion. He also raises issues regarding the sufficiency of the evidence and prosecutorial misconduct, which we find to be without merit and do not discuss.
Evidence presented at the suppression hearing revealed that at 4:00 a.m., a Hillsborough County Sheriff's Office dispatcher advised Deputy Marshall Piper that a citizen had just called 911 from Sylvia Lane and reported observing a large, dark, older model four-door sedan driving up and down Sylvia Lane with its headlights off. The deputy was aware that burglaries had been reported on that same street six to twelve hours earlier. Although the deputy did not testify at the suppression hearing regarding the identity of the citizen caller, he testified that the citizen caller was aware of the burglaries. Defense counsel acknowledged that the call to 911 was made by a victim of one of the earlier burglaries.
Deputy Piper testified that he responded quickly to the dispatch, arriving at Sylvia Lane approximately two to five minutes later. He described Sylvia Lane as a relatively small, residential street. Upon arriving, he saw a large, brown four-door sedan, with its lights on, turning from Sylvia Lane onto North Boulevard. The deputy observed no other traffic on those streets at that time. Deputy Piper turned his vehicle around to follow the brown sedan. He saw Grant, who was driving the brown sedan, look at him, turn away, and then look back in his mirror at the deputy. The deputy initiated a traffic stop. In Grant's vehicle, Deputy Piper observed a TV, a VCR, a camera, a big stuffed animal, and other miscellaneous items. The burglary victim arrived and identified the property in the vehicle. The deputy arrested Grant. At the conclusion of the hearing, the trial judge denied the motion to suppress. After his convictions, Grant appealed.
A trial court's ruling on a motion to suppress is presumed correct, and a reviewing court must interpret the evidence and reasonable inferences in the light most favorable to sustaining the trial court's ruling. See Jenkins v. State, 685 So.2d 918 (Fla. 1st DCA 1996). Here, the issue is whether the police were justified in stopping Grant's vehicle. "`The police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause.'" State v. Gonzalez, 682 So.2d 1168, 1170 (Fla. 3d DCA 1996)(quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). In determining whether an officer possesses a reasonable suspicion of criminal activity to justify an investigatory stop, the totality of the circumstances must be taken into account. See Jenkins, 685 So.2d at 920. Factors that may be considered include: the time of day; the appearance and behavior of the suspect; the appearance and manner of operation of any vehicle involved; and anything incongruous or unusual in the situation as interpreted in light of the officer's knowledge. See Id.
We believe the facts in this case constitute an articulable, particularized basis for suspicion that Grant was or had been engaged in wrongdoing. See State v. Setzler, 667 So.2d 343 (Fla. 1st DCA 1995). Deputy Piper received information that, at 4:00 a.m., a vehicle without headlights was traveling up and down a small street that had been burglarized just hours earlier. Because the information *240 came from a citizen-informant, the officer was entitled to presume its reliability. See Aguilar v. State, 700 So.2d 58 (Fla. 4th DCA 1997). Although the citizen-informant in this case did not witness the earlier burglaries, he was concerned enough about Grant's activities in light of those burglaries to call 911. At that point, Deputy Piper was assigned to investigate the citizen's complaint, and he immediately proceeded to do so. When he arrived, the only car he observed on that street matched the citizen's description. The deputy, too, was aware of the burglaries reported just hours earlier.
In two other cases with facts similar to this one, this court found a reasonable suspicion to exist, justifying an investigatory stop. In State v. Wise, 603 So.2d 61 (Fla. 2d DCA 1992), a deputy sheriff had experienced problems with trespassers attempting to steal his dogs. While he was at work, his wife called and reported that a light blue pickup truck with dog cages in the back was in their yard shining a spotlight. The information was later updated with the truck's direction of travel. Within minutes, another deputy stopped a dark blue pickup truck with dog cages, that was traveling in the direction and area reported. The first deputy's wife arrived and advised that the person stopped was not the person who had been at her home. Nevertheless, this court upheld the stop and a subsequent search, which revealed a concealed firearm and marijuana. The court reasoned that the wife's report of suspicious circumstances, which gave her reason to believe the truck's occupants were at least attempting to commit a misdemeanor theft of her dogs, provided the deputy with authority to investigate. See Wise, 603 So.2d at 63. In State v. Jenkins, 566 So.2d 926 (Fla. 2d DCA 1990), an officer stopped an individual who was riding a bicycle at 1:30 a.m. from a business section of town where there was no activity or businesses open. The officer observed the individual balancing on the handlebars a large cardboard box full of property and a plastic garbage bag "overflowing out of the box." Id. The court held that the cumulative impact of the time, the location, the suspect's appearance and behavior, his operation of the bicycle, and other unusual circumstances provided a sufficient basis for a founded suspicion of criminal activity to justify a stop of the individual. Id. at 927.
Under the totality of the circumstances in the instant case, we are unable to conclude that the deputy's stop of Grant's vehicle violated the Fourth Amendment's prohibition against unreasonable searches and seizures. U.S. Const. amend. IV.
The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry[1] recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
Gonzalez, 682 So.2d at 1171 (quoting Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). Accordingly, we believe the stop of Grant was reasonable under the circumstances, and we affirm the trial court's denial of the motion to suppress. We affirm the judgments and sentences in all respects.
Affirmed.
THREADGILL, A.C.J., and PATTERSON J., concur.
CASANUEVA, J., dissents with opinion.
CASANUEVA, Judge, dissenting.
Upon review of the record, I conclude that the law enforcement officer did not possess a founded suspicion and, therefore, the stop of the vehicle was improper. Accordingly, I dissent.
An investigatory stop requires a well-founded, articulable suspicion of criminal activity. See Popple v. State, 626 So.2d 185 (Fla.1993). A mere suspicion or hunch is insufficient to support a stop. See Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984). A *241 law enforcement officer's founded suspicion of criminal activity must "have some factual foundation in the circumstances observed by the officer when those circumstances are interpreted in the light of the officer's knowledge." Peabody v. State, 556 So.2d 826, 827 (Fla. 2d DCA 1990).
Here, although the law enforcement officer was aware of a burglary that had occurred on this residential street six to twelve hours earlier, he possessed no information that linked either Mr. Grant or his vehicle to that burglary. Thus, he had no reasonable suspicion of Mr. Grant's involvement in the earlier burglary, nor did he possess any information that suggested the vehicle or its occupant were, at this time, engaged in any criminal activity. In fact, it is undisputed that Mr. Grant was lawfully operating his vehicle on a public street, a place where he had every right to be.
The next consideration is whether the general description of the vehicle and the early morning hour combined to create a founded suspicion. In the absence of information particularly describing the vehicle, such as manufacturer, model, or tag number, complete or partial, I would hold the very general description of the car and the early morning hour together yield only a mere suspicion. The requirement that a founded reasonable suspicion must pertain to anticipated or suspected criminal activity cannot be met under these facts. § 901.151, Fla. Stat.; see also, State v. Wimbush, 668 So.2d 280 (Fla. 2d DCA 1996).
This court recently reviewed the issue of a founded suspicion under similar circumstances. In Love v. State, 706 So.2d 923 (Fla. 2d DCA 1998), this court set forth the facts as follows:
Deputy Lewis testified that he first observed Love's vehicle around 3 a.m. driving slowly through a neighborhood. His attention was drawn to the car because it was a late model Toyota. He got behind the vehicle and ran a check on the tag. It was registered to an address located in the direction away from that in which vehicle was traveling. The car had not been reported as stolen. The deputy testified that he stopped the vehicle to do a field interview because he had a suspicion that the driver was casing homes. His suspicion was based on the fact that there had been burglaries in the area, the car was a type that is commonly stolen and it was being driven at a speed of approximately 20 mph in a 35 mph zone.
This court held that these facts known to the officer at the time of the stop did "not rise
to the level of founded suspicion." Id. at 924. We stated:
we are unwilling to hold that driving slowly late at night, in a type of vehicle that is often stolen, in a neighborhood that has had burglaries at some unspecified time in the past will justify an investigatory stop.
Id. Likewise, I am unwilling to hold that properly operating a vehicle late at night in the presence of a law enforcement officer in a neighborhood where a burglary had occurred six to twelve hours earlier will justify an investigatory stop.
Imposing the constitutional exclusionary rule may sometimes result, as stated by Justice (then Judge) Benjamin Cardozo, that the "criminal is to go free because the constable has blundered." People v. Defore, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926). Nonetheless, this is the price exacted by our law to safeguard the privacy rights of each and every one of us under the Fourth Amendment.
Under our case law, the officer possessed a mere suspicion that the vehicle he stopped was the same one reported to be driving without its headlights two to five minutes earlier. Therefore, I would hold that the motion to suppress should be granted.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).