774 So.2d 927 (2001)
Ariel CARATTINI, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-779.
District Court of Appeal of Florida, Fifth District.
January 5, 2001.
*928 James B. Gibson, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, J.
Ariel Carattini appeals the trial court's order denying his motion to suppress evidence in a grand theft case. The issue on appeal is whether an eyewitness report of ongoing criminal activity is legally sufficient to create a reasonable suspicion forming the basis to make an investigatory stop of a vehicle. The standard of review for the trial court's factual findings is whether they are supported by competent substantial evidence and the standard of review for its application of the law to those findings is de novo. See Butler v. State, 706 So.2d 100 (Fla. 1st DCA 1998).
Officer Stewart Jarvis of the Orlando Police Department testified at the suppression hearing that he was working at Dillard's as a security agent, an off-duty job. He was in full uniform. Jarvis was patrolling the Tommy Hilfiger and women's jeans section, the areas where thefts primarily occur, when he received a call stating that there were three suspicious people in the store. As he walked up "to that area," a woman approached him and said, "Three men just ran out of your store carrying a duffle bag full of your clothes." Jarvis testified:
A Well, I asked the lady, could you point-what did they do. She said they went outside and they were getting in a vehicle. I said, could you show me the car. She walked outside with me and she pointed out the car. And she said, there is one of the guys right now. And it was the defendant, was just shutting the trunk of the vehicle. And then he shut the trunk of the vehicle, went around and got in the right rear passenger seat, and the car started driving off.
Jarvis did not know the woman who spoke to him, and he did not get her name. Jarvis called into radio headquarters a partial tag number, a description of the car, and its direction of travel. A few minutes later, Officers Ortiz and Nunez of the Orlando Police Department stopped the vehicle. Learning of the stop, Jarvis went to the scene and called Dillard's store manager, asking him to come to the scene as well. A blue duffle bag was recovered from the rear passenger seat containing jeans valued at $1,800. The officer could see at least one pair of the jeans protruding from the top of the bag. When Jarvis returned to Dillard's, the lady with whom he had initially spoken was gone.
Officer Frank Nunez testified that he stopped the vehicle after a request for units in the area to assist in the investigation of a possible store theft. The officers knew that the vehicle would have to pass them if it continued in the same direction so they waited until they saw it drive by. They got behind the car which had three individuals in it. When Nunez walked up to the vehicle, he saw appellant in the right rear passenger seat. There was a closed blue duffle bag on the seat next to him. After Jarvis arrived at the scene, the bag was inspected. The officers did not obtain consent to search the bag because they were not on a consensual stop. Later, they inspected the trunk and found a "buser" bag, a type of bag that does not set off metal detectors, some duct tape, 12 or 13 pairs of shoes, a countless number of shirts on hangers, and other types of clothing. Dillard's store manager confirmed that the jeans belonged to Dillard's, and the three individuals were arrested.
The trial court denied Carattini's motion to suppress and reasoned:
THE COURT: I think that the circumstances here suggest that the person who gave the information to Officer Jarvis is closer to an identifiable citizen as opposed to an anonymous tipster. I think there is a difference between anonymous phone call, which I think was *929 the situation in JL v. State. Which, by the way, I believe the U.S. Supreme Court has taken cert on this case. I don't know if it's been argued yet this term. I think they have taken cert on it.
In any event, I think this situation really involves an identifiable citizen who was standing next to Officer Jarvis, who gave Officer Jarvis information face to face, who went outside, pointed out the vehicle to Officer Jarvis and pointed out the person closing the trunk of the car.
Now, the reason why that person was not further identified was simply because of the fact that Jarvis had to get about the business of trying to-trying to get these people stopped to conduct a further investigation, and when he came back, this person who he saw and talked to was simply gone. That makes her an unidentifiable after the act. But during the course of the events, she was certainly identifiable. Had there been more officers in the vicinity, certainly somebody could have gotten her name, address, telephone number and et cetera.
I think this is closer to the identifiable citizen situation than it is to the anonymous tipster that you had in JL, which was apparently just a phone call, never identified, never followed up. And there was certainly no way to determine the origin of the information in JL.
So I think that the police officers did what they were supposed to do under these circumstances. There was a situation that was rapidly unfolding. It was a situation in progress. They had apparently reliable information from a person who talked to the officer face to face. And I think the police officers did what they had to do to try to determine whether or not this was a theft, that is, make a founded suspicion stop on the vehicle. So for those reasons, the motion to suppress is denied.
We agree with the trial court that the evidence in this case supports the conclusion that the tip was made by a citizen informant "whose information is at the high end of the tip-reliability scale." See State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997). The Evans court defined a citizen informant as follows:
... "A citizen-informant is one who is `motivated not by pecuniary gain, but by the desire to further justice.'" As one commentator has explained:
[T]he courts have quite properly drawn a distinction between [informers likely to have been involved in the criminal activity] and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a "citizen-informer," is more deserving of a presumption of reliability than the informant from the criminal milieu. As Justice Harlan pointed out in United States v. Harris, [403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)], the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. "The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals."
Wayne R. LaFave, Search and Seizure § 3.3 (3d ed.1996).
[citations omitted]. Evans, 692 So.2d at 219. See Grant v. State, 718 So.2d 238 (Fla. 2d DCA 1998).
The totality of the circumstances in this case supports the conclusion that the tip was by a citizen informant, entitled to a presumption of reliability, rather than by an anonymous source. Although the identity of the informant was never ascertained, that fact is not dispositive. This case presents a classic example of a citizen *930 who becomes an eyewitness to a crime in progress. Performing her civic duty, the citizen reports the crime to an officer. The officer investigates and an arrest is made. Specifically, Officer Jarvis first received a call that there were three suspicious people in the store. When he responded to the area, a woman approached him and reported that three men had just run out of the store carrying a duffle bag full of the store's clothing [emphasis supplied]. Jarvis asked the woman what they had done. She accompanied him outside as the individuals were getting inside of a car. Jarvis asked the woman to show him the car. She pointed out the car and appellant as he was shutting the trunk. As the car drove off, Jarvis radioed in a partial tag number, a description of the vehicle, and the direction in which it was traveling. Within several minutes, the vehicle was stopped and Jarvis immediately responded. When Jarvis arrived on the scene, he saw the blue duffle bag referred to by the informant with a pair of jeans sticking out of it.
The facts in this case are distinguishable from the majority of cases which involve an anonymous phone tip for several reasons. First, the informant, although unidentified, reported her observations to Jarvis face-to-face. Second, her observations were based upon her eyewitness account of a crime in progress. Third, Jarvis conducted his own investigation with her assistance to corroborate her story and identify the individuals involved. Fourth, the exigencies of the situation did not allow him to remain in the area to ascertain her identity. Thus, as the trial court found, the informant, although unidentified in the sense that Jarvis did not know her name or address, was identifiable to him as the crime unfolded.
It would be an absurd result to require an officer to obtain identifying information from an eyewitness informant to a crime in progress when he or she is immediately needed to assist in apprehending the suspects. The court's reasoning in Grant is apt:
The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

Gonzalez, 682 So.2d at 1171 (quoting Adams v. Williams, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972))
Grant, 718 So.2d at 240 [footnote omitted]. See also Felton v. State, 753 So.2d 640 (Fla. 4th DCA 2000).
We find J.L. v. State, 727 So.2d 204 (Fla.1998), affirmed, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), a case urged by Carattini as controlling, distinguishable. In that case, the police received an anonymous call that a young black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. Two officers went to the bus stop where they saw three black males. One of the individuals, J.L., was wearing a plaid shirt. The officers approached J.L., ordered him to put his hands on the bus stop sign, frisked him, and seized a gun from his pocket. The other two males were frisked and nothing illegal was found. J.L. was charged with carrying a concealed firearm without a license and possessing a firearm while under the age of 18. The trial court granted his motion to suppress the gun. The Supreme Court held the search invalid. The Court reasoned that the anonymous tip leading to J.L.'s frisk was unaccompanied by any specific indicia of reliability such as a correct prediction of *931 the suspect's movements. The Court noted:
In the instant case, the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to prove reasonable suspicion to make the investigatory stop." The question we here confront is whether the tip pointing to J.L. had those indicia of reliability.
* * *
The tip in the instant case lacked the moderate indicia of reliability.... The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.....
[citations omitted]. Id., 120 S.Ct. at 1378-1379.
The totality of the circumstances in the present case provide the indicia of reliability required by the courts when reviewing cases involving anonymous tips, as in J.L. An anonymous telephone call in which alleged criminal activity is reported is a distinctively different situation than that of an eyewitness to ongoing criminal activity who reports his or her first-hand observations to an officer and who assists in an ensuing investigation while the crime is still in progress.
Accordingly, the trial court's order denying appellant's motion to suppress is affirmed.
AFFIRMED.
THOMPSON, C.J., and PALMER, J., concur.