847 So.2d 1149 (2003)
Alvin BATSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-182.
District Court of Appeal of Florida, Fourth District.
June 25, 2003.
Carey Haughwout, Public Defender, Jeffrey L. Anderson and Samuel A. Walker, Assistant Public Defenders, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
A jury found Alvin Batson guilty of burglary of a dwelling and grand theft. Batson appeals his convictions, arguing, *1150 among other things, that the trial court erred in denying his motion to suppress evidence linking him to the crime. We find merit in his argument and reverse.[1]
Deputy Turner testified that at around 2:00 a.m., on May 28, 2001, he responded to a call regarding a burglary at 5712 Guava Street. The deputy's report reflected that the initial burglary call came in at about 12:25 a.m. Turner testified that he had been on road patrol for six years and was familiar with the area, describing Guava Street as a dead-end street that curves around like an "S." The burglarized home is two blocks from the end of the street. Deputy Turner did not immediately go to the residence, but drove around the area looking for anybody and anything that seemed out-of-place.
By the time Turner arrived at the residence, three or four marked patrol cars were already there. Deputy Turner made his way to the residence's backyard. While standing there, he noticed a small, red vehicle heading east on Guava and in the direction of the residence. As the car made the ninety degree turn to continue on Guava, the police vehicles would have come into view. Deputy Turner testified that, at that point, the vehicle came to an abrupt stop, backed into a driveway, made a U-turn and left the area. Turner thought this odd because, prior to coming down Guava, there were at least two places to turn around that are nearer to the no outlet sign. According to Deputy Turner, the vehicle came toward the residence on Guava Street at a speed of about fifteen to twenty miles per hour, but left the area at an estimated speed of twenty-five to thirty miles per hour.
On these facts, Turner concluded that the car's occupants might have been involved in the burglary and made the decision to pursue and stop the car. Turner acknowledged that he had no information as to how many people were involved, what they looked like, or whether they fled by car or on foot. Turner followed the vehicle for a while and eventually pulled it over. As a consequence of the stop, police discovered items that had been taken from the Guava Street residence.
Batson sought to suppress the evidence that police obtained as a consequence of the stop, arguing that the police did not have the "reasonable suspicion" of criminal activity necessary to support the stop. The trial court denied Batson's motion to suppress. In reviewing this ruling, we afford deference to the trial court's factual findings, but any legal conclusions are reviewed de novo. See, e.g., Jones v. State, 842 So.2d 889 (Fla. 2d DCA 2003). Whether the facts are sufficient to give rise to a reasonable suspicion of criminal activity is a legal question. See C.A.M. v. State, 819 So.2d 807 (Fla. 4th DCA 2002)(on rehearing).
"An investigatory stop must be based on founded or reasonable suspicion that the vehicle's occupants committed, are committing or are about to commit a crime." Davis v. State, 695 So.2d 836, 837 (Fla. 2d DCA 1997). A mere suspicion of criminal activity is insufficient. See Hill v. State, 561 So.2d 1245, 1246 (Fla. 2d DCA 1990). The totality of the circumstances must be taken into consideration when determining whether the officer has a reasonable suspicion of criminal activity. See Grant v. State, 718 So.2d 238, 239 (Fla. 2d DCA 1998). Such circumstances include the time of day, the suspect's appearance and behavior, "the appearance and manner *1151 of operation of any vehicle involved," and any other unusual circumstances. Id.
Here, police responded to a call regarding a burglary at a residence on a dead-end street. Approximately thirty to forty minutes after the complaint was called in, Deputy Turner observed a car driving down that residential street in the direction of the burglarized home. At the point that the officer estimated that the marked patrol cars would have come into view, the car made a U-turn and left at a speed of about twenty-five to thirty miles per hour. The State suggests that the car's evasive actions in response to the presence of the patrol cars tips the scales to the side of a reasonable suspicion. We disagree.
Admittedly, a suspect's flight in response to the police is a factor that may be considered in assessing the existence of reasonable suspicion when there are other suspicious circumstances. See Hernandez v. State, 784 So.2d 1124, 1127 (Fla. 3d DCA 1999); Q.E.G. v. State, 569 So.2d 1313 (Fla. 1st DCA 1990). Here, the car's "U-turn" is legally insufficient to support the inference that its occupants were attempting to evade the police which were gathered further toward the end of the cul-de-sac. It is certainly difficult to say that the vehicle "sped away" at twenty-five to thirty miles an hour. Thus, the only thing unusual about the circumstances was the late hour and the recently reported crime. The vehicle's mere presence near the scene is insufficient to give rise to a reasonable suspicion that its occupants were connected to the recent burglary. See H.H. v. State, 775 So.2d 397 (Fla. 4th DCA 2000)(holding that facts were insufficient to support reasonable suspicion where the defendant was found riding a bike at about 1:00 a.m. a few blocks from scene of a bicycle theft); Moore v. State, 584 So.2d 1122 (Fla. 4th DCA 1991)(holding that the fact that defendant was riding his bike at 2:00 a.m. only two to three blocks from an apartment where a burglary was reported to be "in progress" was insufficient to support a reasonable suspicion that defendant was involved in criminal activity).
In sum, we hold that the trial court erred in denying Batson's motion to suppress. Consequently, we reverse his conviction and remand for a new trial.
REVERSED and REMANDED.
STONE and WARNER, JJ., concur.
NOTES
[1] Batson has also argued that the trial court fundamentally erred by including the "remaining in" language in the burglary instruction. This issue has been resolved adversely to Batson. See Roberson v. State, 841 So.2d 490 (Fla. 4th DCA 2003)(en banc).