959 So.2d 1285 (2007)
Edward J. CASTELLA, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2495.
District Court of Appeal of Florida, Fourth District.
July 25, 2007.
Rehearing Denied July 25, 2007.
*1286 Michael Metz of the Law Offices of Richard G. Lubin, P.A., West Palm Beach, for appellant.
*1287 Bill McCollum, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING AND/OR CERTIFICATION AND MOTION FOR REHEARING EN BANC
PER CURIAM.
Edward Castella filed a Motion for Rehearing and/or Certification and Motion for Rehearing En Banc. We deny the motion in all regards. However, we withdraw our previous opinion and substitute this opinion in its place in order to further elucidate our analysis.
Edward Castella was convicted of felony boating under the influence following a stop by law enforcement. He raises two issues on appeal. We affirm in all respects, but write to address the issue challenging the denial of Castella's motion to suppress evidence resulting from the stop of his boat.
Castella was charged with leaving the scene of a crash (vessel), two counts of boating under the influence (misdemeanor) [related to the crash], and another count of boating under the influence [related to a law enforcement stop]. He was convicted of the boating under the influence count related to a law enforcement stop and acquitted of the other charges.
Castella filed a motion to suppress, and the trial court held a hearing on the motion. At the hearing, Broward Sheriff's Deputy Dunning testified that he was a marine patrol deputy on an off-duty detail on the night of the incident. He and his partner, Broward Sheriff's Deputy Manes, who was also on the off-duty detail, were eating dinner at a restaurant along the intracoastal waterway. Deputy Manes saw a boat moving fast through an idle speed zone, the deputies went to the water, the boat approached, and the unidentified, excited passengers advised that there had been a boat accident with injuries to the south (the scene of which turned out to be about a mile and two minutes of travel away). The passengers identified Castella's nearby boat as being involved in the accident, but did not indicate when the accident had occurred (although it seemed to the officers that it had just happened). Without confirming whether an accident had occurred, the deputies then made contact with Castella, although he was not violating any laws. Castella appeared drunk and unsteady. Manes testified that he saw a cooler and empty beer bottles and cans in Castella's boat.
Broward Sheriff's Deputy Anthony testified that he was working as part of the DUI Task Force on the night of the incident and was called to the scene of the stop. When Anthony came into contact with Castella, Castella appeared extremely unsteady, with flushed skin, watery eyes, slurred speech, and the odor of alcohol on his breath. Based on his appearance and field sobriety exercises, Anthony concluded that Castella had been boating under the influence. Fort Lauderdale Police Officer Blish, who was also on scene, testified that when he came into contact with Castella, Castella smelled of alcohol, his eyes were bloodshot, and his speech was slurred.
Following the suppression hearing, the trial court made the following ruling on the record:
The Court heard the evidence in the motion to suppress hearing. Deputy Dunning testified that on August 28, year 2004, while he and his partner Deputy Manes were approaching by boat the Roadhouse Grill restaurant, which is immediately south of the Commercial Boulevard bridge on the intracoastal, a boat approached them at high speed. The people that were in the boat were agitated, *1288 told them that a boat accident had just taken place and pointed to the vessel of the defendant as being involved in this boat incident.
The deputies approached the defendant's vessel which it was an open fisherman, they made contact with the defendant's boat, the defendant was the only occupant of the boat. Defendant appeared to Deputy Dunning as being unsteady, appeared drunk and Deputy Dunning at that point told the defendant to take his boat to the Bayview Medical Center area by water.
The people who gave the information to Deputy Dunning told him that the accident had taken place north of the Commercial Boulevard bridge. The defendant's boat was traveling south on the waterway and was at the point that these individuals pointed his vessel coming right under the bridge from the location of where the deputy said theI mean the people said the accident had taken place.
Deputy Manes, who was also with Deputy Dunning at that time, said that when they approached the defendant's boat, he observed a cooler, he observed empty bottles of beer on the floor of the vessel. He had the impression from the individuals who gave them the information and pointed to the defendant's vessel that the accident had just happened.
The Court also had the opportunity to observe the video of the sobriety tests that were administered by Deputy Anthony to the defendant and the performance of the defendant on those tests.
Finally, the last deputy [Blish] who appeared on Monday at the continuation of the hearing stated that the defendant when approached, smelledhad an odor of intoxicants and raised a suspicion.
The Court did some research as to whether what the defense has referred to as tipsters that were not identified are at the same level as an anonymous tipster. The Court finds two cases right on point, Carattini versus State, CARATTINI, which is [7]74, So.2d, 920 [927], 79927, a 2001 case. In this case, a security officer in a retail store was approached by a woman who said three men just ran out of your store carrying a duffle bag full of your clothes. The security officer asked the lady to point who the three men were, she went with him to the parking area, pointed to the three individuals, pointed to the car that the three individuals were getting in to. The security officer did not know the woman who spoke to him and he never got her name or any other identification.
Based on the information given by this woman, the security officer called the police who approached the three defendants, they had the merchandise from the store and they were placed under arrest.
The Court in this case of Carattini versus State denied the motion to suppress and states, I think that the circumstances here suggest that the person who gave the information to Officer Jarvis is closer to an identifiable citizen as opposed to an anonymous tipster.
In any event, I think this situation really involves an identifiable citizen who was standing next to Officer Jarvis, who gave Officer Jarvis information face to face, who went outside, pointed out the vehicle to Officer Jarvis and pointed out the person closing the trunk of the car.
Now, the reason why that person was not further identified was simply because of the fact that Jarvis had to get about the business of trying to get these people stopped to conduct a further investigation and when he came back, this person who he saw and talked to were simply gone. That make her unidentifiable *1289 after the act, but during the course of the events she was certainly identifiable. Had there been more officers in the vicinity, certainly somebody could have gotten her name, address, telephone number etcetera.
I think this is closer to identifiable citizens situation than it is to anonymous tipster that you had in JL versus State, which was apparently just a phone call, never identified, never followed up.
The court of appeals agrees with the trial court, affirms the denial of the motion to suppress and states the totality of the circumstances in this case supports the conclusion that the tip was by a citizen informant entitled to a presumption of reliability rather than by an anonymous source. Although the identity of the informant was never ascertained, that fact is not dispositive. This case presents a classic example of a citizen who becomes eyewitness to a crime in progress.
Supporting the same statement of the law is also Milbin, MILBIN versus State, 792, So.2d, 1272, and that is also a 2001 case from the Fourth District Court of Appeal which stands for the same legal proposition.
In this case, even though the individuals who approached Deputy Dunning and Deputy Manes were not identified by way of obtaining their names or any other information, they gave the information regarding the defendant face to face, they pointed to the defendant and the defendant's vessel, they gave information as to where the accident had taken place, their actions, their words and demeanor, indicated to the police officers that the accident had just taken place. The boat or vessel of the defendant was coming from the direction of the accident. At that point the police officers had sufficient facts to do an investigateto stop the defendant to investigate the facts.
Once they approached the defendant, they saw his behavior as unsteady, his appearance as being drunk, the odor, the open bottles of beer, there was reasonable suspicion for his detention, his further failure to conduct the sobriety test, together with the totality of the circumstances gave sufficient probable cause for the arrest in this case.
The motion to suppress is denied.
The trial court also denied Castella's motion to suppress for the reasons stated on the record in a written form order.
The case proceeded to trial, and the jury acquitted Castella of leaving the scene of a crash (vessel) and the two counts of boating under the influence (misdemeanor) related to the crash, but found him guilty as charged with the boating under the influence count related to the stop by law enforcement. Castella was adjudicated guilty (of felony BUI based on his prior DUI convictions). He then filed a motion for new trial raising the denial of the motion to suppress. The trial court denied the motion for new trial. Castella was then sentenced to five years in prison.
"`The standard of review applicable to a motion to suppress evidence requires that this Court defer to the trial court's factual findings but review legal conclusions de novo.'" Pantin v. State, 872 So.2d 1000, 1002 (Fla. 4th DCA 2004) (citation omitted).
"`To stop and detain a person for investigation, an officer must have a reasonable suspicion that the person has committed, is committing, or is about to commit a crime.'" State v. Gonzalez, 840 So.2d 401, 403 (Fla. 4th DCA 2003) (citations omitted). Whether reasonable suspicion has been established is determined by the totality of the circumstances. Id.
*1290 Law enforcement may conduct an investigatory stop of an individual based on a tip providing reasonable suspicion where that tip has been "deemed sufficiently reliable, based on either `the surrounding circumstances or the nature of the information given in the tip itself.'" Aguilar v. State, 700 So.2d 58, 59 (Fla. 4th DCA 1997) (citations omitted). This determination partially hinges upon the status of the individual providing the tip, whether an anonymous tipster or a citizen informant. On one hand, "[b]ecause an anonymous caller's basis of knowledge and veracity are typically unknown, these tips justify a stop only once they are sufficiently corroborated by police." State v. Evans, 692 So.2d 216, 218 (Fla. 4th DCA 1997). On the other hand, the veracity and reliability of a citizen informant are presumed, because such an informant "`is one who is "motivated not by pecuniary gain, but by the desire to further justice,"'" such as by relating details of a witnessed crime to law enforcement as a matter of civic duty; consequently, further investigation and corroboration by law enforcement is not required. Evans, 692 So.2d at 219 (citations omitted); see also State v. Manuel, 796 So.2d 602, 605 (Fla. 4th DCA 2001). Furthermore, "[a] witness who provides information to a police officer through `face to face' communication is deemed to be sufficiently reliable," so as to generally be classified as a citizen informant. See Milbin v. State, 792 So.2d 1272, 1274 (Fla. 4th DCA 2001).
Turning to the cases cited by the parties, one is relied on heavily by the State (and the trial court) and another is relied on heavily by Castella. The first case, which was cited by the State (and the trial court), is Carattini v. State, 774 So.2d 927 (Fla. 5th DCA 2001). In Carattini, a uniformed officer working off-duty in a department store received a call stating that there were three suspicious people in the store. Id. at 928. As he walked to the area of the report, a female customer approached him and stated that three men had just run out of the store with a duffel bag full of clothing. Id. The customer then pointed out the vehicle to the officer and pointed out one of the men she saw, who was getting into the vehicle. Id. The officer did not know the customer or take her name, but he reported the tip to dispatch. Id. The vehicle was apprehended by other officers and shoplifted jeans were discovered in a duffel bag in the vehicle. Id. Carattini moved to suppress the evidence, but the trial court denied his motion to suppress based on its conclusion that the customer was a citizen informant. Id. at 928-929.
The Fifth District affirmed based on the totality of the circumstances. Id. The court concluded that the customer was a citizen informant in the classic sense, one performing her civic duty to report a crime that she witnessed in progress. Id. at 929-930. The court focused on several factors that made the customer's tip more reliable than that of an anonymous tipster, including that it was face-to-face, that it was an eyewitness account, that the customer assisted in the officer's corroborative investigation, and that the exigencies of the situation did not allow the officer time to ascertain the customer's identity. Id. at 931. In sum, the Fifth District held:
An anonymous telephone call in which alleged criminal activity is reported is a distinctively different situation than that of an eyewitness to ongoing criminal activity who reports his or her first-hand observations to an officer and who assists in an ensuing investigation while the crime is still in progress.
Id. at 931.
The second case, which was cited by Castella, is Solino v. State, 763 So.2d 1249 *1291 (Fla. 4th DCA 2000). In Solino, an anonymous motorist driving a white SUV flagged down a law enforcement officer and informed him that a bottle had been tossed out of the window of a green Nissan that had been driving in front of the SUV. Id. at 1249. The deputy did not obtain the SUV driver's name or the tag number of the SUV, nor did he see a bottle thrown from the Nissan or any traffic infraction committed by the driver of the Nissan. Id. The Nissan was stopped and the driver arrested on outstanding charges. Id. at 1249-1250. Solino filed a motion to suppress that was denied by the trial court. Id. at 1249. This Court reversed, holding that "the driver of the white SUV was nothing more than an anonymous tipster who could not be identified or located and whose information was not corroborated." Id. at 1252.
We conclude that the issue of suppression in this case hinges on the type of informants involved and their interaction with the deputies who investigated Castella. In Carattini, the individual who provided information to law enforcement face-to-face was deemed a citizen informant. In Solino, the individual who provided information to law enforcement face-to-face was deemed an anonymous tipster. The question remains whether the individuals who provided information to law enforcement face-to-face in this case are best deemed anonymous tipsters or citizen informants.
We conclude that the individuals in this case who provided information to law enforcement face-to-face are more akin to citizen informants than anonymous tipsters. Unlike in Solino, and the case it relied upon, State v. Rewis, 722 So.2d 863 (Fla. 5th DCA 1998), the individuals reporting information to law enforcement in this case did not allege that the defendant was involved in activity amounting to traffic infractions or criminal offenses, such as throwing a bottle out of an automobile window on the highway or driving a vehicle in a recklessly weaving manner on the highway. Instead, the individuals in this case simply indicated that Castella had been involved in an accident, not that he in any way had caused the accident or committed a criminal or boating infraction. As such, rather than investigating criminal activity based on face-to-face interaction with individuals who left as quickly as they came, law enforcement in the present case undertook its public safety function in the wake of a reported tragedy. As such, based on the face-to-face interaction between the individuals and law enforcement officers in this case, fulfillment of a civic duty to provide an eyewitness report of a boating accident, and the exigencies of investigating a possible emergency situation, we conclude that, in light of the totality of the circumstances, the individuals in this case were citizen informants upon whose information the deputies were entitled to rely without further corroboration when stopping Castella's boat.[1]
*1292 Furthermore, because of the public safety implications of the situation in this case, the deputies were justified in stopping Castella's boat even without a reasonable suspicion of criminality (as the citizen informants in no way implicated him in any wrongdoing). As discussed below, this conclusion is based on a principle, the community caretaking doctrine, which although typically applied to warrantless inventory searches of automobiles that are creating a danger, nuisance, or invitation to vandalism, can also be applied to the stop of a boat without reasonable suspicion for purposes of gathering information to provide assistance to those affected by a potentially life-threatening accident. We affirm on this basis, even though the trial court did not consider and was not asked to consider this doctrine, based on the "tipsy coachman" rule. See Lowery v. State, 766 So.2d 417, 417 (Fla. 4th DCA 2000)("This court may affirm a trial court decision deemed `right for a different reason' under the `tipsy coachman' rule.").
The community caretaking doctrine addresses those law enforcement functions that are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Instead, searches and seizures under the community caretaking doctrine focus on "concern for the safety of the general public." Id. at 447, 93 S.Ct. 2523. In addition to automobile searches, the doctrine also encompasses the seizure of individuals "`in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity.'" Samuelson v. City of New Ulm, 455 F.3d 871, 877 (8th Cir.2006) (citation omitted). Such a seizure is reasonable if it is based on specific articulable facts and a reviewing court determines that the balance between law enforcement's interest in protecting public safety and the individual's interest in being free from arbitrary governmental interference favors seizure. Id. Overall, under the community caretaking doctrine, law enforcement "may make warrantless searches and seizures in circumstances in which they reasonably believe that their action is required to deal with a life-threatening emergency." Russoli v. Salisbury Township, 126 F.Supp.2d 821, 846 (E.D.Pa.2000).
Here, under the community caretaking doctrine, the deputies were justified in stopping Castella's boat in order to obtain any information they could about the accident, its location, and its aftermath in order both to rescue the injured and to protect the general public from dangers resulting from the damaged vessel, such as the potential for explosion, debris, and impediment to travel on the intracoastal. Although Castella's boat itself may not have represented a danger, it was instrumental to resolving a potential danger caused by the accident scene from which it had just fled. Additionally, based on the specific articulable facts provided by the citizen informants regarding the general vicinity of the accident and the involvement of Castella's boat in the accident, we conclude that law enforcement could reasonably believe that its interest in protecting public safety by obtaining additional information *1293 necessary to manage the aftermath of the potentially life-threatening accident out-weighed Castella's interest in being free from arbitrary governmental interference.
Because the individuals who met with the deputies are classified as citizen informants and the deputies were acting under the community caretaking doctrine, the trial court did not err by denying Castella's motion to suppress the evidence of BUI discovered during the fully legal and constitutional stop of his boat. Therefore, this case on appeal is affirmed in all respects.
Affirmed.
GUNTHER, STONE and FARMER, JJ., concur.
NOTES
[1] Even if it could be said that law enforcement was possessed of reasonable suspicion to investigate some crime related to the accident or Castella's flight from the accident, which we do not believe is the case based on the totality of the circumstances and the articulable facts known to law enforcement at the time, we would still distinguish Solino and Rewis and find the individuals to be citizen informants. This is because the fact remains that the present case involved a public safety concern not typically present during investigatory traffic stops. Unlike in Solino and Rewis, where there was no indication that anyone was placed directly and immediately in danger by the actions of the drivers throwing bottles or weaving on the highway, there was a demonstrable exigency in the present case resulting from the report of a boating accident suggesting the possibility of life-threatening injuries and immediate dangers to the public resulting from both debris at the accident scene and any unknown risks posed by Castella's boat (as it could have been damaged or he could have been injured or impaired based on his reported involvement in the accident). However, we note that it would be unnecessary for courts to wrangle with legal analysis such as that in this case if law enforcement would make an attempt in all circumstances conceivably possible to comply with the best practice of always obtaining names and contact information from those reporting potential crimes.